426 F.2d 534
 16 A.L.R.Fed. 613
 Mrs. Patricia B. MILLER, individually, and on behalf of her
minor children, Denise and Daniel Miller,
Plaintiffs-Appellants,
v.
AMUSEMENT ENTERPRISES, INC., d/b/a Fun Fair Park, Defendant-Appellee.
 No. 27529 Summary Calendar.
 United States Court of Appeals, Fifth Circuit.
 May 13, 1970.
 
 Johnnie A. Jones, Baton Rouge, La., Norman C. Amaker, Jack Greenberg, New York City, for appellants.
 W. P. Wray, Jr., Bert K. Robinson Baton Rouge, La., for appellee.
 Before JOHN R. BROWN, Chief Judge, and THORNBERRY and MORGAN, Circuit judges.
 JOHN R. BROWN, Chief Judge:
 
 
 1
 This case, here for the second time, came to us on Plaintiffs-Appellants' appeal from a denial of attorney fees. Originally Appellants unsuccessfully sought injunctive relief against admitted racial discrimination in the operation of Fun Fair Park in Baton Rouge, Louisiana. E.D.La., 1966,259 F.Supp. 523. On the prior appeal this Court sitting en banc held that the racial discrimination practiced at the amusement park was covered and forbidden by Title II of the 1964 Civil Rights Act.[1] 5 Cir., 1968, 394 F.2d 342, reversing 391 F.2d 86. On remand the District Court rescinded its prior order and entered judgment for the Plaintiffs. But the Court declined to grant attorney fees[2] because 'at the time of the incident involved, and indeed even up to and after the initial hearing of this matter before the Fifth Circuit Court of Appeals, it is this Court's opinion that defendant was not, under the law of the land or the law of the case as it then stood, operating Fun Fair Park in violation of Title 42 1983 and 1988 * * *.' We reverse.[3]
 
 
 2
 Much of this sounds like the decision depends on the outcome of a debate between Austinians and Blackstonians. Under the Austinian view of retroactivity, when a decision overrules earlier law, the prior law is still in effect as to actions taken under it. See, e.g., Taylor v. Ypsilanti, 1882, 105 U.S. (15 Otto) 60, 26 L.Ed. 1008; Douglass v. Pike County, 1880, 101 U.S. (11 Otto) 677, 25 L.Ed. 968. Under the Blackstonian view 'the law' (in issue) has existed almost from the time of the great void. Judges do not determine now what the law is. They merely discover the law as it has always been, and upon its discovery the old 'law' is extinguished and never existed. See, e.g., Norton v. Shelby County, 1886, 118 U.S. 425, 6 S.Ct. 1121, 30 L.Ed. 178. With all their limitations courts today are hardly beguiled by these intriguing dialectical fictions. Not surprisingly, courts today have an eclectic, rational approach to retroactivity and under it the 'effect of the subsequent ruling as to invalidity may have to be considered in various aspects.' Chicot County Drainage Dist. v. Baxter State Bank, 1940, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329. We see it most often now, in the wake of Linkletter v. Walker, 1965, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601, in the area of criminal law.
 
 
 3
 But we do not have to decide which approach to use here to decide that the Trial Judge's determination is patently erroneous. In our former decision we were not dealing with retroactive effect of a change in the law, we were dealing with the effect of a statute which was in force at the time of Appellee's racially discriminatory actions. The question was whether the Civil Rights Act of 1964 covered the activities under scrutiny. If so, the Courts-- trial or appellate-- were to so declare together with such remedial sanctions as were appropriate. But the actions of Fun Fair Park became subject to the prescribed judicial relief because the Court said so, but rather because the Court said-- even perhaps for the very first time-- that the Congress said so.
 
 
 4
 A look at what the Trial Judge's conclusion means demonstrates its unsoundness. The reasoning would essentially transplant the effective date of any statute from the date as fixed by the legislature to the date of the first authoritative judicial interpretation. It would also mean that the person whose post-effective date (as legislatively fixed) action is the first to be judicially declared in violation of the statute could not be held accountable. Nor, for that matter, could any others whose actions, which otherwise would be thought of as plain violations of the statute, had taken place between the effective date as fixed by the legislature and the first judicial pronouncement. Conversely the injured party would have few if any remedies even though expressly provided by the statute until some other plaintiff had preceded him in breaking the ground.
 
 
 5
 A fictionalized approach which grants effectual absolution to the first defendant (civil or criminal) and makes a sacrificial lamb of the first victim is hardly acceptable.
 
 
 6
 The law covered the Fun Fair. Its discriminatory practices were illegal under the Act at the time they occurred. The Court was required to-- and did on remand-- forbid its continuance.
 
 
 7
 With that as the place of beginning in their claim for statutorily prescribed attorney fees (see note 2, supra) Appellants' well-placed reliance is on Newman v. Piggie Park Enterprises, Inc., 1968, 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263. There the Supreme Court held that the attorney fees provision of Title II required such an award 'unless special circumstances would render such an award unjust.'[4] The Court specifically rejected respondents' argument that such an award was warranted only in situations in which defendants advanced their defenses 'for purposes of delay and not in good faith.'[5]
 
 
 8
 Two things seem to underlie the holding in Newman. The first is, of course, the strong congressional declaration of policy that no person should be barred from public accommodations for reasons of race. Second, effectuation of this policy was primarily to be achieved through private suits by individuals. This flowed to a large extent from one of the great compromises in this and related legislation. The role of the Attorney General as the chief legal officer was markedly curtailed. True, he may bring suit, but only under the limiting circumstances of a 'pattern or practice' of discrimination.[6] And the right of intervention, which is ordinarily accorded under liberalized circumstances,[7] is confined to cases which the Attorney General certifies as being of 'general public importance'[8] -- the same added factor which can trigger a three-judge court suit (see note 6, supra).
 
 
 9
 But there is yet more. Not only is initiation restricted primarily to private parties with little or no governmental assistance, but the nature of the relief to be granted pursuant to Title II is expressly limited to preventive, injunctive remedies,[9] which excludes recovery of damages.[10]
 
 
 10
 Since Congress expressly denied damages, out of which contingent fees could be generated, as a sanction under Title II and yet committed effectual enforcement to individuals acting as 'private Attorneys General'[11] whose status and economic resources[12] would seldom permit such victims of forbidden discrimination to pay for legal counsel, it is clear that the statutory allowance of attorney fees (note 2, supra) was a vital part of the whole scheme. To allow attorney fees only in 'exceptional' cases would therefore frustrate the congressional purpose.
 
 
 11
 This question for us is simply whether such an award is unjust in the instant case because of special circumstances. Appellees point to certain factors that differentiate this case from Newman and call them 'special circumstances': (i) Defendant raised no frivolous defenses or issues, (ii) its contentions were put forward in subjective good faith (i.e., believed to be meritorious), and (iii) several Judges agreed with these contentions along the way (see note 5, supra).
 
 
 12
 None of these can be denominated a special circumstance. The first and third-- that a controversy existed, and that facts proved it to be a nonfrivolous controversy - are certainly not unusual in a law suit. They are the stuff suits are made of. The second-- Appellee's good faith was specifically rejected as a special circumstance in Newman (see note 4 and accompanying text, supra).
 
 
 13
 But regardless of failure on these contentions, Fun Fair insists that no fees at all can be awarded since there is no showing that the named Plaintiffs were or are obligated to pay attorney fees. But this again ignores the structure of the Act and the vital role the allowance of attorney fees plays.
 
 
 14
 What is required is not an obligation to pay attorney fees. Rather what-- and all-- that is required is the existence of a relationship of attorney and client,[13] a status which exists wholly independently of compensation, as witness the effective service of counsel in the defense of criminal cases, the assertion of post-conviction habeas remedies and the now widespread organized services on behalf of the poor.[14]
 
 
 15
 Any other approach would call either for a fictional formal agreement by persons legislatively recognized as frequently unable to pay for such services (see note 12, supra) or a frustration of the congressional scheme to effectuate the policies of the Act through private suits in which, of course, an attorney is a practical necessity. Congress did not intend that vindication of statutorily guaranteed rights would depend on the rare likelihood of economic resources in the private party (or class members) or the availability of legal assistance from charity-- individual, collective or organized. An enactment aimed at legislatively enhancing human rights and the dignity of man through equality of treatment would hardly be served by compelling victims to seek out charitable help.
 
 
 16
 Administratively no difficulties arise. Under the statute the attorney fees are allowed 'as part of the costs' (note 2, supra). This and the general equitable powers of the Court, will assure that the fees allowed are to reimburse and compensate for legal services rendered and will not go to the litigants, named or class.
 
 
 17
 The Newman rule should have been applied by the Trial Court and its application calls for the allowance of attorney fees as part of the costs. On remand the Trial Judge is to determine and grant reasonable attorney fees. This will include fees for prosecution of the original trial and appeal on the merits, fees at the trial and appellate stage on the question of attorney fees, and fees upon remand.
 
 
 18
 Reversed and remanded.
 
 
 
 [1]
 Title II is the Public Accommodations portion of the 1964 Civil Rights Act (201-207) 42 U.S.C.A. 2000a-- 2000a-- 6
 
 
 [2]
 In Williams v. Kimbrough, 5 Cir., 1969, 415 F.2d 874, 875 n. 1, cert. denied, 396 U.S. 1061, 90 S.Ct. 753, 24 L.Ed.2d 755 we held that 'the Civil Rights Act of 1964, Title II, specifically allows attorneys' fees in cases filed to redress discrimination in Public Accommodation Actions,' but that this provision does not seep over into school desegregation cases
 Section 204(b) of Title II states:
 'In any action commenced pursuant to this subchapter, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, and the United States shall be liable for costs the same as a private person.'
 42 U.S.C.A. 2000a-- 3(b).
 
 
 [3]
 Initially presented as a motion for summary reversal the Court called for full briefs on the merits. Upon full consideration we have, pursuant to Rule 18 of the Rules of this Court concluded on the merits that this case is of such character as not to justify oral argument and have directed the Clerk to place the case on the Summary Calendar and to notify the parties in writing. See Murphy v. Houma Well Service, 5 Cir., 1969, 409 F.2d 804, Part I; and Huth v. Southern Pacific Co., 5 Cir., 1969, 417 F.2d 526, Part. I
 
 
 [4]
 'When the Civil Rights Act of 1964 was passed, it was evident that enforcement would prove difficult and that the Nation would have to rely in part upon private litigation as a means of securing broad compliance with the law. A Title II suit is thus private in form only. When a plaintiff brings an action under that Title, he cannot recover damages. If he obtains an injunction, he does so not for himself alone but also as a 'private attorney general,' vindicating a policy that Congress considered of the highest priority. If successful plaintiffs were routinely forced to bear their own attorneys' fees, few aggrieved parties would be in a position to advance the public interest by invoking the injunctive powers of the federal courts. Congress therefore enacted the provision for counsel fees-- not simply to penalize litigants who deliberately advance arguments they know to be untenable but, more broadly, to encourage individuals injured by racial discrimination to seek judicial relief under Title II
 It follows that one who succeeds in obtaining an injunction under that Title should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'
 Newman v. Piggie Park Enterprises, Inc., 1968, 390 U.S. 400, 401, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263, 1264-1265.
 
 
 [5]
 If the 'good faith' is viewed as one of doubt on the applicability of the Act rather than the impermissible notion that there may be 'good faith' racial discrimination, the position of Fun Fair in the litigation is not subject to this criticism. It is not often that a loser garners so many Judges in his camp, as witness: one Judge at the trial state, E.D.La., 1966, 259 F.Supp. 523; two out of three Judges on the original panel on appeal, 5 Cir., 1967, 391 F.2d 86; and five out of 14 judges on rehearing en banc, 5 Cir., 1968, 394 F.2d 342, believed Fun Fair's position to be correct
 
 
 [6]
 Section 206 allows the Attorney General to institute suit
 'Whenever the Attorney General has reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights secured by this subchapter, and that the pattern or practice is of such a nature and is intended to deny the full exercise of the rights herein described * * *.'
 42 U.S.C.A. 2000a-- 5(a). Such a suit can be heard by a three-judge court if the Attorney General so requests and certifies 'that, in his opinion, the case is of general public importance.' 42 U.S.C;A. 2000a-- 5(b).
 This 'pattern or practice' follows the similar pattern in Title VII on employment, 42 U.S.C.A. 2000e-- 6 and in Title IV on public education, 42 U.S.C.A. 2000c-- 6. See, e.g., United States v. Greenwood Municipal Separate School Dist., 5 Cir., 1969, 406 F.2d 1086, cert. denied, 395 U.S. 907, 89 S.Ct. 1749, 23 L.Ed.2d 220.
 
 
 [7]
 F.R.Civ.P. 24; and see Atlantis Development Corp. v. United States, 5 Cir., 1967, 379 F.2d 818; and its sequel on the merits after remand, United States v. Ray, 5 Cir., 1970, 423 F.2d 16
 
 
 [8]
 Section 204 provides that 'upon timely application, the court may, in its discretion, permit the Attorney General to intervene in such civil action if he certifies that the case is of general public importance.' 42 U.S.C.A. 2000a-- 3(a)
 
 
 [9]
 Section 204(a) states:
 'Whenever any person has engaged or there are reasonable grounds to believe that any person is about to engage in any act or practice prohibited by section 2000a-- 2 of this title, a civil action for preventive relief, including an application for a permanent or temporary injunction, restraining order, or other order, may be instituted by the person aggrieved * * *.'
 42 U.S.C.A. 2000a-3(a).
 
 
 [10]
 Section 207(b):
 'The remedies provided in this subchapter shall be the exclusive means of enforcing the rights based on this subchapter * * *.'
 42 U.S.C.A. 2000a-- 6(b).
 The limitation relates to Title II suits, for 207(b) also provides:
 'nothing in this subchapter shall preclude any individual or any State or local agency from asserting any right based on any other Federal or State law not inconsistent with this subchapter, including any statute or ordinance requiring nondiscrimination in public establishments or accommodations, or from pursuing any remedy, civil or criminal, which may be available for the vindication or enforcement of such right.'
 
 
 [11]
 Newman, supra, note 4, 390 U.S. at 400, 88 S.Ct. at 964, 19 L.Ed.2d at 1264. See also under Title VII, Pettway v. American Cast Iron Pipe Co., 5 Cir., 1969, 411 F.2d 998, 1005; Jenkins v. United Gas Corp., 5 Cir. 1968, 400 F.2d 28, 32-33; Culpepper v. Reynolds Metals Co., 5 Cir., 1970, 421 F.2d 888
 
 
 [12]
 See the general statement in H.R.Rep. No. 914 88th Cong. 1st Sess
 
 
 [13]
 There is no suggestion that counsel were acting without instruction or authority of Mrs. Miller
 
 
 [14]
 Included among counsel were attorneys associated with a legal defense group who have acted in hundreds of civil rights cases before this Court and the District Courts of this Circuit. See, e.g., Sanders v. Russell, 5 Cir., 1968, 401 F.2d 241, in which, in another context, we stated: 'The award of attorney's fees pursuant to Titles II and VII of the 1964 Civil Rights Act, 42 U.S.C.A. 2000a-3(b), 2000e-5(k); Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968) is not in conflict with a policy of refusing to accept fees from clients.' 401 F.2d at 244, n. 5