**Shelby STEELE, Plaintiff-Appellee,**

v.

**TITLE REALTY COMPANY and Frank Sawatzki, Defendants-Appellants.**

**No. 72–1175.**

United States Court of Appeals, Tenth Circuit.

May 16, 1973.

William J. Lockhart, Salt Lake City, Utah (Ronald N. Boyce, Salt Lake City, Utah, with him on the brief), for plaintiff-appellee.

Richard L. Bird, Jr., of Richards, Bird & Kump, Salt Lake City, Utah, for defendants-appellants.

Before LEWIS, Chief Judge, and PICKETT and McWILLIAMS, Circuit Judges.

PICKETT, Circuit Judge.

Appellant Sawatzki, a real estate broker doing business in Salt Lake City, Utah, as Title Realty Company, appeals from a judgment awarding appellee Steele a total of $4,450 compensatory and punitive damages, together with attorney fees for violation of the Fair Housing Act, 42 U.S.C. §§ 3604 and 3612 (1970). In addition, the court re-

quired Sawatzki to offer the property in question to Steele at a fixed rental and permanently enjoined him from refusing to rent or sell real property on account of a person's race, and ordered him, for a period of one year, to place in every advertisement or notice offering properties for rent or sale a statement that such property was available to all persons without regard to race. The issues of substance presented here relate to the sufficiency of the evidence to sustain the findings that Sawatzki violated the Fair Housing Act and to sustain the awards for compensatory and punitive damages and attorney fees.

█ Early in 1971 Steele, a black man who lived in St. Louis, Missouri, accepted a teaching position at the University of Utah. In anticipation of his move to Salt Lake City, Steele authorized Lester Standiford of that city to negotiate for suitable housing for Steele and his family upon arrival. Standiford learned that an apartment occupied by Richard Baum would be vacated at about the time Steele would arrive in Salt Lake City. Baum referred Standiford to his landlord, Sawatzki, and also advised Sawatzki that Steele was interested in the property and that Standiford would contact him. Sawatzki learned from Baum that Steele was a Negro. When Standiford advised Sawatzki that Steele desired to rent the property he was told that a rental agreement would not be made with a prospective tenant's agent but only with a tenant in person, even though Standiford tendered one month's rent and offered to supply Sawatzki with recommendations from Steele's personal friends and from his present landlord and employer. In his conversations with Baum and Standiford, Sawatzki explained to them the economic difficulties encountered with other renters if any of the property were rented to a Negro. As a result of Sawatzki's refusal to enter into a rental agreement before Steele's arrival this action was brought. An injunction was obtained preventing Sawatzki from leasing the property until Steele either ac-

cepted or rejected a lease within a specified time. Steele arrived in Salt Lake City during the early part of July 1971 and after one inspection declined to rent the property. In a trial on the merits Steele sought monetary and punitive damages together with attorney fees under 42 U.S.C. § 3612(c) (1970). Throughout his testimony Sawatzki maintained that he advised Baum and Standiford that he had no personal prejudice toward black people but reiterated the problems arising with other renters if he permitted any of them to move into the area. The policy of not renting to an agent was not mentioned until after Sawatzki knew that Steele was a Negro. The trial court found:

> Mr. Sawatzki's claim of a "policy" of not renting until he has "seen" the tenant is not credible under the circumstances of this case and in light of the clearly discriminatory motives reflected in the testimony of all of the witnesses herein, including that of Mr. Sawatzki. Further, from Mr. Sawatzki's own testimony as set forth hereafter, it is clear that this policy was mingled with, and at least in part based upon, racial motives.

The finding is not clearly erroneous.

█ Accepting the existence of a policy of not renting to a prospective tenant's agent, if racial discrimination was a part of the determination not to rent, the statute was violated. Haythe v. Decker Realty Co., 468 F.2d 336 (7th Cir. 1972); Smith v. Sol D. Adler Realty Co., 436 F.2d 344 (7th Cir. 1970); Hall v. Freitas, 343 F.Supp. 1099 (N.D. Cal.1972); Williamson v. Hampton Management Co., 339 F.Supp. 1146 (N.D.Ill. 1972).

█ It is urged that the award of $1,000 compensatory damages was excessive. The $1,000 was composed of $13.25 in telephone expense, $125 in moving and storage expense, and $861.75 for emotional distress and humiliation. The telephone expense was stipulated. Steele claims that the $125 moving expense to store his belongings in Chicago with his

parents was necessary because he did not know he would have a place to live when he got to Salt Lake City. The trial court found that the expense was "necessitated by the unavailability of the property in Salt Lake City at the time he [Steele] vacated his apartment in St. Louis." Steele testified that he arrived in Salt Lake City around July 1, 1971. According to Sawatzki's testimony, the property would not have been available to Steele until after he arrived in Salt Lake City and inspected the property. Sawatzki had previously refused to accept a one month advance rental. Under these circumstances the cost of storage was an element of damage.

■ Damages in cases of this kind are not limited to out-of-pocket losses but may include an award for emotional distress and humiliation. Smith v. Sol D. Adler Realty Co., 436 F.2d 344 (7th Cir. 1970); Donovan v. Reinbold, 433 F.2d 738 (9th Cir. 1970); Rhoads v. Horvat, 270 F.Supp. 307 (D.Colo.1967); Massachusetts Commission Against Discrimination v. Franzaroli, 357 Mass. 112, 256 N.E.2d 311 (1970); cf. Allen v. Gifford, 462 F.2d 615 (4th Cir. 1972), cert. denied 409 U.S. 876, 93 S.Ct. 128, 34 L. Ed.2d 130 (1972). *See also* Duda, Damages for Mental Suffering in Discrimination Cases, 15 Clev.-Mar.L.Rev. 1 (1966); Annot., 40 A.L.R.3d 1290 (1971).

■ Even though the discrimination here was perpetrated in a courteous manner and was not vindictive or abusive, the right to recover for the humiliation and emotional distress suffered exists nevertheless. Temperate conduct may, however, be considered as a mitigating circumstance in determining damages. Browning v. Slenderella Systems of Seattle, 54 Wash.2d 440, 341 P. 2d 859 (1959). Sawatzki's contention that since he dealt only with Steele's agent he cannot be held liable for emotional distress is without merit. His discriminatory acts were directed against Steele. Steele suffered the consequences and can recover. Sawatzki's

conduct, however, while discriminatory, could not be classed as wanton, reckless or malicious, or with intent to injure Steele whom he did not know. Steele was not a stranger to this situation. He testified that in the past on a number of occasions "in college towns across the country" he and his family had been denied housing facilities. It is understandable that he "was very tired of it" and "upset" over such treatment and was determined to do something about it. Although it is difficult to measure what amount is sufficient "to ease one's feelings" for injuries of this nature, the $1,000 award is not unreasonable.

■ Section 3612(c) of the Fair Housing Act of 1968 provides that for a violiation the court in appropriate cases may grant injunctive relief, "actual damages and not more than $1,000 punitive damages, together with court costs and reasonable attorney fees in the case of a prevailing plaintiff: *Provided,* That the said plaintiff in the opinion of the court is not financially able to assume said attorney's fees." The statutory provisions relating to punitive damages do not create a new right and are designed to limit the amount of recovery to $1,000 where punitive damages are found to be appropriate under the general rules regarding the award thereof. We are convinced that Congress did not intend punitive damages to be allowed for every violation of the statute.

■ Sawatzki did not own the property in question, but was the sole managing agent for the owner. His duty to his principal was to manage the property for the best interest of that principal. The record is replete with evidence that Sawatzki had no personal bias or prejudice toward Steele or anyone else of the black race, and regretted that all white people did not feel the same way. His reluctance to rent to black people, while not a legal excuse, was the result of objections by other renters of his principal's property. There was no evidence that the refusal to rent to Steele was motivated by ill will, malice, or a desire to injure him. The evidence was to the

contrary. As indicated by the court in its findings, racial discrimination was only one of the reasons for the refusal to rent. On the record as a whole we conclude that the allowance of punitive damages is not appropriate. *See* Newman v. Nelson, 350 F.2d 602 (10th Cir. 1965); Annot., 14 A.L.R.Fed. 608 ¶ 9 (1973).

 The court allowed a total of $2,450 attorney fees for the preparation and presentation of the case in the trial court. The statute permits the recovery of attorney fees when the plaintiff is "not financially able" to assume such fees. The test is not limited to present ability of the plaintiff to pay but whether he is financially able to assume them. The evidence of Steele's ability to assume his attorney fees is scanty, but it is sufficient to support the court's finding that such fees should be allowed. The allowance of attorney's fees to the successful civil rights plaintiff who is unable to assume them is not to penalize the defendants in such actions, but one of the purposes is "to encourage individuals injured by racial discrimination to seek judicial relief. . . ." Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968). After a review of the entire record, however, we are convinced that the allowance of $2,450 for services in the trial court is excessive. This is a simple statutory action requiring a minimum of time. The evidence to a large extent was undisputed and was presented at the trial of the case on its merits in about two hours. The allowance of attorney fees is generally within the sound discretion of the trial court. The amount of the allowance is to be determined by the facts in each case. Featherstone v. Barash, 382 F.2d 641 (10th Cir. 1967); Simler v. Conner, 352 F.2d 138 (10th Cir. 1963); United States v. Anglin & Stevenson, 145 F.2d 622 (10th Cir. 1944), cert. denied, 324 U.S. 844, 65 S.Ct. 678, 89 L.Ed. 1405 (1945). In an appropriate case an appellate court may, in the interest of justice, exercise its independent judgment in the determination of reasonable attorney fees. Meeks v. State Farm Mutual Insurance Co., 460 F.2d 776 (5th Cir. 1972); B–M–G Investment Co. v. Continental/Moss Gordin, Inc., 437 F.2d 892 (5th Cir.), cert. denied, 402 U.S. 989, 91 S.Ct. 1668, 29 L.Ed.2d 154 (1971). The attorney fees to be allowed are $1,500 for services in the trial court and $500 on appeal.

 The court permanently enjoined Sawatzki from refusing to rent or sell available property because of a person's race, and further required that any advertisement made within one year include a notice that such properties were available to all persons without regard to race. The record is devoid of any evidence of the extent of Sawatzki's operations or that he advertised in any particular manner, or that he had ever before refused to rent to a person because of his race. He complied with the court's order by offering the property to Steele. This is not a class action and the injunctive relief is unnecessary and inappropriate.

 It is urged that the court erred in permitting the reception in evidence through the cross examination of Sawatzki of testimony given in a prior injunction proceeding by an absent witness. The cross examination complained of referred to the former testimony of Sawatzki concerning a conversation he had with the absent witness about Sawatzki's attitude toward renting to black people. It was proper cross examination. The court's findings are replete with reproduction of testimony, some of which was produced at the preliminary hearings but not at the trial on the merits. If there was any error in including reference to this testimony, it was inconsequential and did not result in prejudice. We find no merit in the contention that the conduct of the trial judge displayed such bias and prejudice as to deny fair trial.

The injunction is dissolved and the judgment modified to disallow punitive damages, and to allow total attorney fees in the sum of $2,000 including services on appeal. As modified, the judgment is affirmed.