Murray **TILLMAN** et al.

v.

**WHEATON–HAVEN RECREATION AS-SOCIATION, INC., et al.**[1]

**Civ. A. No. 21294–N.**

United States District Court,
D. Maryland.

Dec. 5, 1973.

1. (Footnote 1 corrected the name of one of the individual defendants shown in the full caption of the case from "Richard E. McIntyre" to "E. Richard McIntyre").

Allison W. Brown, Jr., Washington, D. C., for plaintiffs.

Henry J. Noyes, Rockville, Md., for defendants, Wheaton-Haven Recreation Assn., Inc., Bernard Katz, Philip S. Trusso, Sidney M. Plitman, Anthony J. DeSimone, Brian Carroll, Albert Friedland, Mrs. Robert Bennington, Mrs. Anthony Abate, James V. Welch, Mrs. Ellen Fenstermaker, Walter F. Smith, Jr., and James M. Whittles.

John H. Mudd and H. Thomas Howell, Baltimore, Md., for defendant E. Richard McIntyre.

NORTHROP, Chief Judge.

Upon remand from the United States Supreme Court, the following issues are presented to this Court:

1. What kind of damages, if any, are the plaintiffs entitled to recover?

2. Assuming the plaintiffs are entitled to recover damages, to what extent are the directors of defendant Wheaton-Haven Recreation Association, Inc. (Wheaton-Haven) individually liable?

3. Should the plaintiffs be awarded attorney fees?

## SUMMARY OF FACTS

Defendant Wheaton-Haven, a non-profit Maryland corporation, was or-

ganized in 1958 for the purpose of operating a "community swimming pool." Membership is limited to 325 families and is keyed to a geographical area three quarters of a mile in radius from the pool facility. A person residing within this area receives a preferential place on the waiting list for membership if he applies when the membership is full. Further, the resident-member, who is a homeowner and who sells his home and turns in his membership, confers on the purchaser a first option on the vacancy created by his removal and resignation. A person residing outside the three-quarter mile area may apply for membership only upon the recommendation of a member; he receives no preferential place on the waiting list if the membership is full, and he has no way of conferring an option upon the purchaser of his property. Majority approval of those present at a meeting of the board of directors or of the general membership is required before an applicant is admitted as a member.

Only members and their guests are admitted to the pool. No one else may gain admission merely by payment of an entrance fee.

In the spring of 1968 plaintiff, Harry C. Press, a black who had purchased from a non-member a home within the geographical preference area, inquired about membership in Wheaton-Haven. At that time the Association had no black member. In November 1968 the general membership rejected a resolution that would have opened the way for black members. Dr. Press was never given an application form, and defendants concede that he was discouraged from applying because of his race.

In July 1968 plaintiffs, Murray and Rosalind N. Tillman, who were husband and wife and members in good standing, brought plaintiff Grace Rosner, a black, to the pool as their guest. Although Mrs. Rosner was admitted on that occasion, the guest policy was changed by the board of directors, at a special meeting the following day, to limit guests to relatives of members. Defendants concede that one reason for the adoption of this policy was to prevent members from having blacks as guests at the pool. Under this new policy Mrs. Rosner thereafter was refused admission when the Tillmans sought to have her as their guest. In the Fall of 1968 the membership, by resolution, reaffirmed the policy.

In October 1969 plaintiffs (Mr. and Mrs. Tillman, Dr. and Mrs. Press, and Mrs. Rosner) instituted this civil action against the Association and individuals who were its officers or directors, seeking damages and declaratory and injunctive relief, particularly under the Civil Rights Act of 1866, 42 U.S.C. § 1982 (1970), the Civil Rights Act of 1870, 42 U.S.C. § 1981 (1970), and the Civil Rights Act of 1964, 42 U.S.C. § 2000a et seq. (1970).

## DAMAGES

■ In holding that 42 U.S.C. § 1982 bars all racial discrimination, private as well as public, in the sale or rental of property in the case of Jones v. Alfred H. Mayer Co., 392 U.S. 409, 88 S. Ct. 2186, 20 L.Ed.2d 1189 (1968), the Supreme Court left open the question of whether damages are recoverable for a violation of § 1982. In Sullivan v. Little Hunting Park, Inc., 396 U.S. 229, 90 S. Ct. 400, 24 L.Ed.2d 386 (1969), the Court addressed this issue and declared that when legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done. See Bell v. Hood, 327 U.S. 678, 684, 66 S.Ct. 773, 90 L.Ed. 939 (1946). The "available remedies" include both federal and state rules on damages whichever better serves the policies expressed in the federal statutes. See 42 U.S.C. § 1988; Sullivan v. Little Hunting Park, Inc., supra, 396 U.S. at 240, 90 S.Ct. 400. Moreover, the remedies available under the Civil Rights Act of 1964, 42 U.S.C. § 2000a et seq., according to the Supreme Court, in no way limit the remedies provided for under 42 U.S.C. § 1982. This means that when a case like the instant

one is grounded in §§ 1981, 1982, and Title II of the 1964 Civil Rights Act, the congressional refusal to permit recovery of damages under Title II (*see* Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968)), does not preclude a victorious plaintiff from recovering damages under 42 U.S.C. § 1982. Consequently, the plaintiffs in the instant case are entitled to damages.

■ Lower courts have interpreted uniformly the Court's broad language on damages in *Sullivan* to warrant the award of both compensatory and punitive damages upon a finding of a violation of § 1982. *See, e. g.,* Tramble v. Converters Ink Co., 343 F.Supp. 1350, 1354–1355 (N.D.Ill.1972); Allen v. Gifford, 368 F.Supp. 317 (Equal Opportunity in Housing) (E.D.Va. May 15, 1973); Seaton v. Sky Realty Co., Inc., (N.D.Ill. Jan. 25, 1972). In the instant case, therefore, upon a proper showing of evidence, the plaintiffs should be granted compensatory damages. These damages may include out-of-pocket expenses and humiliation, embarrassment or emotional injury from 1968 to 1973. *See* Franklin v. Agostinelli, P–H EOH (Equal Opportunity in Housing) ¶ 13555 (W.D.Wash. Aug. 12, 1971); Steele v. Title Realty Co., 478 F.2d 380 (10th Cir. 1973).

■ In reference to punitive damages, it is a general principle of the law of damages that to subject a wrongdoer to liability for exemplary damages, it *must* be found that he acted with actual malice, ill will, or conscious disregard of consequences to others. C. McCormick, Handbook on the Law of Damages § 79 (1935); Davis v. Gordon, 183 Md. 129, 133, 36 A.2d 699, 701 (1944). Since such damages are punitory and are assessed as an example and warning to others, they are not favored in law and are to be allowed only with caution and within narrow limits. Lee v. Southern Home Sites Corp., 429 F.2d 290 (5th Cir. 1970); Aladdin Mfg. Co. v. Mantle Lamp Co., 116 F.2d 708 (7th Cir. 1941). Consequently, in those civil rights cases

in which punitive damages were denied, the courts declared that such damages cannot be awarded without proof that the defendant acted wilfully and wantonly; Wright v. Kaine Realty Co., 352 F. Supp. 222 (N.D.Ill.1972); and the fact that the defendant was found to have committed unlawful racial discrimination is not sufficient alone or without other "circumstances" to entitle the plaintiff to punitive damages. Lee v. Southern Home Sites Corp., *supra,* 429 F.2d at 294–295; Steele v. Title Realty Co., *supra,* 478 F.2d at 384. Concomitantly, those courts awarding punitive damages make a finding of fact, either expressly or impliedly, that the defendant acted with malice, wantonly, or in clear disregard of the statute. *See* Seaton v. Sky Realty Co., *supra;* Peoples v. Doughtie, P–H EOH ¶ 13528 (M.D. Ala. Nov. 19, 1971).

The plaintiffs in the instant case, however, urge that this Court award damages on the grounds that inherent in the nature of racial discrimination is an element of "malice" or "wantonness." The plaintiffs do not cite any authority for this proposition, and this Court is unable to find any. Therefore, this Court finds this contention of the plaintiffs to be without merit.

■■ Going to actual evidence of ill will or malice, the plaintiffs claim that malice can be found from the fact that the defendants' actions were in clear violation of 42 U.S.C. § 1982 as construed by the Supreme Court in Sullivan v. Little Hunting Park, Inc., *supra.* In support of this proposition, the plaintiffs refer to the unanimous Supreme Court decision in this case and that Court's statement that *Sullivan* controlled the instant case. The plaintiffs are correct in stating that courts have readily discerned sufficient recklessness or wantonness to justify imposition of punitive damages when the defendant racially discriminates in *clear* violation of the civil rights statutes. Peoples v. Doughtie, *supra,* ¶ 13528 at 13576; Allen v. Gifford, *supra,* ¶ 13599 at 13946. When, however, the defendant has rea-

sonable grounds to believe that his conduct is not forbidden by the civil rights statutes, it cannot be said that he acts recklessly or maliciously to pursue that course of action. Philadelphia W. & B. R.R. Co. v. Hoeflich, 62 Md. 300, 307 (1884); see Gonzales v. Fairfax-Brewster School, Inc., 363 F.Supp. 1200, at p. 1205 n. 5 (E.D.Va. July 27, 1973); Sullivan v. Little Hunting Park, Inc., Chancery No. 22751 (Cir.Ct. Fairfax County, May 27, 1970) (Judgment order —no punitive damages awarded). In the instant case the defendants had more than a reasonable basis to believe that their conduct was not proscribed by 42 U.S.C. § 1982 or 42 U.S.C. § 2000a et seq. In fact, the defendants believed that the statute expressly permitted their discriminatory activity by exempting private clubs from its purview. See 42 U.S.C. § 2000a(e). Furthermore, this Court found in favor of the defendants on their motion to dismiss and the Fourth Circuit both affirmed and denied rehearing en banc. Simply because the Supreme Court unanimously reversed does not in this Court's opinion render the defendants' views unreasonable ab initio. Therefore, this Court finds that the plaintiffs are not entitled to recover punitive damages.

## LIABILITY OF DEFENDANT DIRECTORS

A director, merely by reason of his office, is not personally liable for the torts of the corporation. Phelps Dodge Refining Corp. v. Federal Trade Commission, 139 F.2d 393, 397 (2d Cir. 1943); 3 W. Fletcher, Cyclopedia of the Law of Private Corporations § 1137 (perm.ed. 1965). "Specific direction or sanction of, or active participation or cooperation in, a positively wrongful act of commission or omission which operates to the injury or prejudice of the complaining party is necessary to generate individual liability in damages of an officer or agent of a corporation for the tort of the corporation." Lobato v. Pay Less Drug Stores, Inc., 261 F.2d 406, 409 (10th Cir. 1958); Fletcher v. Havre

de Grace Fireworks Co., 229 Md. 196, 201, 177 A.2d 908, 910 (1962); Levi v. Schwartz, 201 Md. 575, 95 A.2d 322 (1953); 3 W. Fletcher, supra. An essential component of a "positively wrongful act" and thus the degree of the directors "participation" therein is the director's knowledge of the wrongfulness of the act that is the basis of the tort claim. If the director does not know, and if in the exercise of due diligence could not have known that his action was wrongful or illegal, he cannot be held personally liable for the torts of the corporation. Wolfersberger v. Miller, 327 Mo. 1150, 39 S.W.2d 758, 764 (1931); Schroeder v. Sanford-Felt Inv., 177 Okl. 54, 57 P.2d 601 (1936); Mitchell v. Deeds, 49 Ill. 416 (Sup.Ct.1867).; Tedrow v. Deskin, 265 Md. 546, 551, 290 A.2d 799, 802 (1972).

In the instant case, only the Supreme Court case of Jones v. Alfred H. Mayer Co., supra, had been decided when Wheaton-Haven's exclusionary guest and membership policies were adopted. To the vast majority of the legal community at that time the factual situation of Alfred Mayer was clearly distinguishable from this case, and the defendant directors would have been hard pressed (as Chief Justice Burger and Justices Harlan and White were) to anticipate the application of Alfred Mayer to a community swimming pool as was done in Sullivan v. Little Hunting Park, Inc., supra. Even Sullivan, which was handed down after the initiation of this suit, exhibited sufficient factual and legal differences to convince this Court and the Fourth Circuit that Sullivan did not require a similar result in the instant case. Therefore, the defendant directors did not know nor in the exercise of due diligence could not have known that the adoption of racially restrictive policies was illegal.

In addition to the lack of knowledge of the wrongfulness of their action, the directors believed, as stated earlier in this opinion, that their exclusionary policies were permitted under the "private club" exemption of Title II of the 1964

Civil Rights Act. Such a belief was reasonable since the defendants obtained two separate opinions of counsel before refusing to admit blacks as members or guests. Furthermore, the defendant directors' position was asserted in good faith, because they were at all times acting in accordance with the views of Wheaton-Haven's membership. The racially restrictive guest and membership policies were overwhelmingly approved by the general membership in the Fall of 1968. Where a director possesses a reasonable, good faith belief that he is acting in a legal manner, he cannot be held liable individually for the torts of the corporation. *Cf.* Richardson v. Snow, 340 F.Supp. 1261, 1263 (D.Md. 1972).

Since the defendant E. Richard McIntyre "championed the cause of the admission of Dr. Press," (Tillman v. Wheaton-Haven Recreation Ass'n, Inc., 451 F.2d 1211, 1225 (4th Cir. 1971)), it follows *a fortiori* that he cannot be held personally liable.

For these reasons, this Court holds that only the defendant Wheaton-Haven Recreation Association, Inc. will bear the burden of the damages award.

## ATTORNEY FEES

While in most cases the awarding of counsel fees is within the discretion of the district court, the Supreme Court has limited severely the exercise of that discretion in cases involving Title II of the 1964 Civil Rights Act. Newman v. Piggie Park Enterprises, Inc., *supra*.[2] In *Newman* the Court declared that attorney fees ordinarily should be awarded to a victorious plaintiff. The Court's rationale is as follows:

If successful plaintiffs were routinely forced to bear their own attorneys' fees, few aggrieved parties would be in a position to advance the public interest by invoking the injunctive powers of the federal courts. Congress therefore enacted the provision for counsel fees—not simply to penalize litigants who deliberately advance arguments they know to be untenable but, more broadly, to encourage individuals injured by racial discrimination to seek judicial relief under Title II. [Footnote omitted] 390 U.S. at 402, 88 S.Ct. at 966.

The Supreme Court, however, found that attorney fees should not be allowed if "special circumstances would render such an award unjust." 390 U.S. at 402, 88 S.Ct. at 966. Upon a complete consideration of the record as a whole and the argument of counsel, this Court finds that the awarding of attorney fees is not warranted by the circumstances of the instant case.

First, the defenses raised by the defendants are by no means frivolous. On their motion to dismiss, the defendants argued that Wheaton-Haven was a private club and, therefore, exempt from the coverage of Title II of the 1964 Civil Rights Act (*see* 42 U.S.C. § 2000a(e)), and that the racial discrimination in question was not proscribed by 42 U.S.C. § 1982 because the acquisition of membership in Wheaton-Haven was not incident to a protected sale or lease of property. This Court found substantial merit in the defendants' position and granted their motion to dismiss. The Fourth Circuit affirmed and denied a rehearing *en banc*. Tillman v. Wheaton-Haven Recreation Ass'n, Inc., *supra*.

Second, the contentions of the defendants were put forward in subjective good faith (i. e., they believed them to be meritorious). As stated before, the defendants sought two separate opinions of counsel before embarking on the course of action that ultimately led to the present litigation.

---

2. The *Newman* rule has been applied to cases grounded in 42 U.S.C. § 1982. *See* Lee v. Southern Home Sites Corp., 444 F.2d 143, 147–148 (5th Cir. 1971).

Third, the Supreme Court in *Newman* emphasized the fact that the only relief available to a plaintiff in a Title II suit is an injunction. 390 U.S. at 402, 88 S. Ct. 964. Therefore, according to the Court, the majority of aggrieved individuals would be precluded economically from bringing civil rights suits if they were routinely forced to bear their own attorney fees. When damages are awarded, however, as in suits under 42 U.S.C. § 1982, the need for recovery of attorney fees is decreased significantly. In the instant case, this Court has already determined that the plaintiffs will be able to recover compensatory damages.[3]

Last, the allowance of attorney fees in the instant case would not have the effect of promoting the congressional policy against racial discrimination in public accommodations and in the sale or lease of property. The means by which Congress intended to encourage private suits under Title II and § 1982 is to relieve plaintiffs of an economic burden that would otherwise preclude the majority of injured persons from seeking judicial relief. Newman v. Piggie Park Enterprises, Inc., *supra*, 390 U.S. at 402, 88 S.Ct. 964. But where no economic burden exists or where the nature of the burden is such that no relief is obtained by an award of attorney fees, this Court sees no useful purpose in making such an award.

In the instant case, counsel for the plaintiffs, Mr. Allison W. Brown, Jr., is an employee of the National Labor Relations Board and in his spare time works for the American Civil Liberties Union. Mr. Brown informed this Court at the hearing that no one, the plaintiffs, the NLRB, or the ACLU, will be obligated to pay his fees. He is donating his legal services to the prosecution of this case.

In addition, under a gentleman's agreement with the ACLU, if attorney fees are awarded in one of his cases, he will donate the money to a charity of his choice. Consequently, there is no economic burden on the plaintiffs or on a charitable organization that would be assuaged by the recovery of attorney fees. Of course, there is a burden upon Mr. Brown, but it is not of such a nature to prevent him from prosecuting as many racial discrimination cases as he desires. His economic status will be the same regardless of whether attorney fees are awarded or denied.

Allowing recovery of attorney fees in the instant case, in this Court's view, would be tantamount to imposing punitive damages on the defendants for their illegal racial discrimination. The ultimate effect of an award would be to force the defendants to contribute to a charitable organization unconnected with this litigation. This Court finds that Congress never intended for unrelated charities to be the sole beneficiaries of an award of attorney fees.[4]

Furthermore, a denial of an award should not deter an aggrieved party from instituting legal action. The rule of *Newman* still controls situations in which the plaintiff retains his own counsel, or a charitable organization assumes the obligation to pay attorney fees. *See* LaRaza Unida v. Volpe, 57 F. R.D. 94, 98 and 98 n. 6 (N.D.Calif. 1972); Miller v. Amusement Enterprises, Inc., 426 F.2d 534, 538–539 (5th Cir. 1970); Lea v. Cone Mills Corp., 438 F. 2d 86 (4th Cir. 1971).

The case of Miller v. Amusement Enterprises, Inc., *supra*, does not compel a different conclusion. In *Miller* the Fifth Circuit stated that the assertion of non-frivolous defenses was not a

3. If damages have not been incurred or cannot be proven, the *Newman* rule should be applied. *See* Lee v. Southern Home Sites Corp., 444 F.2d 143, 148 (5th Cir. 1971).

4. Of course, if the money was turned over to the plaintiffs, the award of attorney fees would be exactly the same as a recovery of punitive damages.

"special circumstance" within the meaning of the *Newman* holding. 426 F.2d at 538. This view, however, does not give sufficient weight to the following sentences of the Supreme Court's opinion in *Newman*:

> Because no such circumstances are present here,[5] . . . .

5. Indeed, this is not an even borderline case, for the respondents interposed defenses so patently frivolous that a denial of counsel fees would be manifestly inequitable. 390 U.S. at 402, 402 n. 5, 88 S.Ct. at 966.

These statements logically imply that non-frivolous defenses can be denominated as "special circumstances." The sustaining of the defendants' position on their motion to dismiss by this Court and the Court of Appeals is sufficient for this Court to find a "special circumstance."

The Court in *Miller* also declared that the lack of an obligation to pay attorney fees on the part of the plaintiff is not a "circumstance" justifying a denial of counsel fees. All that is required, according to the Fifth Circuit, is a relationship of attorney-client. 426 F.2d at 538; *contra*, Lea v. Cone Mills Corp., *supra*, 438 F.2d at 89 (Boreman, J., dissenting); United States v. Gray, 319 F. Supp. 871, 872–873 (D.R.I.1970). This principle of law, however, is not a completely accurate statement of its rationale. The rationale for the Fifth Circuit's rule is that Congress did not intend that vindication of statutorily guaranteed rights would depend on the economic resources of a private party or the availability of charity. As stated above, a denial of attorney fees in the instant case will in no way preclude the allowance of counsel fees when a party retains his own counsel or accepts the legal assistance of a charitable organization.

For these reasons, this Court holds that the awarding of attorney fees under the circumstances of this case would be unjust.