E. C. JONES

v.

**UNITED STATES of America.**

**Civ. A. No. B–77–309–CA.**

United States District Court,
E. D. Texas,
Beaumont Division.

Dec. 29, 1980.

Robert I White, Larry A. Campagna, Chamberlain, Hrdlicka, White, Johnson & Williams, Houston, Tex., for E. C. Jones.

Gerald B. Leedom, Dept. of Justice, Tax Division, Washington, D. C., for United States of America.

## MEMORANDUM OPINION [1]

JOE J. FISHER, District Judge.

This case is before the Court on remand from the Court of Appeals for the Fifth Circuit for the purpose of awarding attorneys' fees "consistent with the guidelines expressed in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)." *E. C. Jones v. United States*, 613 F.2d 1311, 1314 (5th Cir. 1980).

### I

The plaintiff, E. C. Jones (Jones) brought this suit for a refund of employment taxes for 1973 and 1974. Jones was assessed approximately $1500 for employment taxes relating to Jimmy Wayne Morton, a tree feller who performed services for Jones, a logging contractor. Jones made a partial payment of $53.74 and filed a claim for a refund with the IRS. When the claim was denied, Jones filed this refund suit. The government counterclaimed for $10,170, the full amount of the employment taxes not reduced by the amounts that were already paid by Morton.[2]

The essence of plaintiff's original claim is that Morton was an independent contractor of Jones and not an employee as claimed by the IRS. The case was tried before Judge Steger who ruled that Morton was an independent contractor. The government's counterclaim was dismissed. Jones moved for an award of attorneys' fees pursuant to the Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988.[3] The motion was denied and Jones appealed. On appeal, the Fifth Circuit reversed and remanded for the purpose of awarding attorneys' fees "for

1. This Memorandum Opinion constitutes the findings of fact and conclusions of law required by Rule 52(a), F.R.Civ.P.

2. *See E. C. Jones v. United States*, 613 F.2d 1311, 1312 & n.3 (5th Cir. 1980).

3. Section 1988 of Title 42 provides, in part:

In any action or proceeding .. by or on behalf of the United States of America, to enforce, or charging a violation of, a provision of the United States Internal Revenue Code ..., the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

both the trial and appellate phases." *E. C. Jones v. United States*, 613 F.2d 1311, 1314 (5th Cir. 1980). The Fifth Circuit held that attorney's fees may be awarded in a tax case when there is a showing that "the government's action was frivolous, unreasonable, or without foundation," *id.* at 1313–14, even though not brought in subjective bad faith, *id.* The government's counterclaim in this case "was the epitome of a frivolous and unreasonable lawsuit." *Id.*

The hearing on remand brought out the following facts not in the record on appeal. Jones was represented throughout these proceedings by the firm of Chamberlain, Hrdlicka, White, Johnson and Williams of Houston. The Chamberlain, Hrdlicka firm was retained by the Piney Woods Logging Contractors' Association (PWA), a group of logging contractors united for the purpose of establishing that tree cutters who perform services for logging contractors were independent contractors for payroll tax purposes, rather than employees. Jones is a member of the PWA. The Chamberlain, Hrdlicka firm and the PWA entered into an agreement whereby the firm was to litigate two test cases against the IRS, one in the Court of Claims, and one in the Eastern District of Texas. The PWA agreed to pay a $10,000 minimum retainer. The PWA was to be billed monthly for the firm's services, first using up the $10,000 retainer and the balance to be paid as billed. The hourly billing for services was not to exceed $35,000. Each member of the PWA was assessed a portion of the expense of hiring the Chamberlain, Hrdlicka firm, depending on the size of the member's operation. The agreement was supplemented in 1978 to account for the Civil Rights Attorney's Fees Award Act of 1976. The supplemental agreement provided that the firm would litigate the attorneys' fee issued in the District Court and Court of Appeals. Any fee award to Jones was to be turned over to the PWA pursuant to another side agreement. The PWA would pay for the firm's services up to $35,000 as originally agreed, and would be paid in full if successful out of the award. If Jones lost the attorney fee claim, the firm would not be paid.

## II

Jones now moves for an award of $22,705 for attorneys' fees as follows: $11,427.50 for the original trial; $7,240 for the appeal; and $4,240 for the present motion. The government does not contest the reasonableness of the fee for the services rendered. Rather it argues that the fee award should be limited under the factual and legal circumstances.

## A

The government argues that in a tax refund suit under 42 U.S.C. § 1988, the attorneys' fee award should be limited to the amount that the plaintiff is contractually obligated to pay to his attorney. The government relies on language in *Johnson v. Georgia Highway Express*, 488 F.2d 714, 718 (5th Cir. 1974), which arguably supports its position.[4] In this case, the plaintiff is not contractually obligated to pay his attorney. Jones' liability is limited to what he paid or agreed to pay the PWA, if anything. If the government's argument were correct, it would follow that the plaintiff is not entitled to any attorney fee award. This is certainly not the result mandated by the Fifth Circuit, and counsel has cited no authority construing *Johnson* to so limit the fee award.[5] The fee award should not be

---

**4.** One of the factors in determining the fee award in *Johnson* is whether the fee is fixed or contingent. In that regard, the Fifth Circuit stated: "In no event, however, would the litigant be awarded a fee greater than he is contractually bound to pay, if indeed the attorneys have contracted as to amount." 488 F.2d at 718.

**5.** The government cites *Foster v. Boise-Cascade, Inc.*, 420 F.Supp. 674, 680–83 (S.D.Tex.

1976), for the proposition that the courts will not sanction a windfall to the attorneys. Aside from the fact that *Foster* involved a class action settlement agreed to by the parties in a Title VII action, the case is not on point because it is not argued here that the attorneys are receiving a windfall. In fact, the evidence indicates that the Chamberlain, Hrdlicka firm may have lost money in undertaking to represent the PWA. The government also cites *Clark v. American Marine Corp.*, 320 F.Supp.

reduced because the plaintiff is not obligated to pay his attorney. *See Neeley v. City of Grenada*, 624 F.2d 547, 551–52 n.4 (5th Cir. 1980); *Miller v. Amusement Enterprises, Inc.*, 426 F.2d 534, 538 (5th Cir. 1970).

## B

In a related argument, the government asserts that the award should be decreased by the amounts contributed by nonparties, *i. e.* the PWA. The government is correct in stating that the statute provides for payment of fees to the prevailing party and not to the attorney. *See Johnson*, 488 F.2d at 718. It does not follow, however, that the expenses on nonparties are not recoverable. "As a general matter, awards of attorneys' fees where otherwise authorized are not obviated by the fact that individual plaintiffs are not obligated to compensate their counsel. The presence of an attorney-client relationship suffices to entitle prevailing litigants to receive fee awards." *Rodriguez v. Taylor*, 569 F.2d 1231, 1245 (3d Cir. 1978) (age discrimination case). The Fifth Circuit has stated: "What is required is not an obligation to pay attorney fees. Rather what—and all—that is required is the existence of a relationship of attorney and client, a status which exists wholly independently of compensation ...." *Miller v. Amusement Enterprises, Inc.*, 426 F.2d 534, 538 (5th Cir. 1970) (applying 42 U.S.C. § 1988); *see Gore v. Turner*, 563 F.2d 159, 164 (5th Cir. 1977) (applying section 1988); *Sellers v. Wollman*, 510 F.2d 119, 123 (5th Cir. 1975) (Truth in Lending Act case); *Fairley v. Patterson*, 493 F.2d 598, 607 (5th Cir. 1974) (Voting Rights Act case).

■ The government argues that the above cited cases should be distinguished

709, 711 (E.D.La.1970), *aff'd mem.*, 437 F.2d 959 (5th Cir. 1971), but in that case, the court stated that the attorney-client "agreements should not determine the court's decision." 320 F.Supp. at 711. That language was quoted with approval in *Johnson*, 488 F.2d at 718.

The passage quoted from *Johnson*, see note 4, *supra*, applies to a situation where, for example, the plaintiff agreed to pay the attorney a fixed or contingent fee and sought to recover more than that amount as an attorney fee

and the expenses of the PWA should not be reimbursed because the case is not in the category of "public interest litigation." This Court does not think the application of section 1988 should be so limited. First, the Fifth Circuit in remanding this case mandated that this Court follow the guidelines expressed in *Johnson*, a civil rights case. Secondly, nothing in section 1988 indicates that different standards should be used in awarding fees in "public interest litigation" as opposed to private litigation. Section 1988 applies to civil rights actions as well as suits against taxpayers. There is no authority for the government's position that only out of pocket expenses should be awarded in suits against taxpayers.[6] Lastly, even though most suits against taxpayers involve private economic interests, the reach of the present cases is greater. The issue of whether tree fellers are employees or independent contractors is of interest to the logging industry generally. The issue of recovery of attorneys' fees in a taxpayer refund suit is not a purely private economic interest of the PWA or Jones. Jones' opposition to the IRS policy of asserting the entire amount of an employment tax assessment when only a fraction of the amount is due is in the public interest. Therefore, Jones should recover fees paid by the PWA.

## C

■ The government's third argument is that the fee award should be limited to the expenses directly related to its frivolous counterclaim. The government tried to show that the cost of defending the counterclaim was a small fraction of the total cost.

It is clear that were it not for the counterclaim, plaintiff would not be entitled to

award. Any limitation intended by the quoted language from *Johnson* simply has no application to a case where the litigant is not contractually obligated to pay his attorney.

6. The government cites *Thompson v. Madison County Bd. of Educ.*, 496 F.2d 682, 289 (5th Cir. 1974) in support of its position. That case only goes as far as permitting an award to non-parties in public interest litigation, and does not address awards in private litigation.

any fee award. *See E. C. Jones v. United States*, 613 F.2d 1311, 1313 (5th Cir. 1980); *Key Buick Co. v. CIR*, 613 F.2d 1306, 1309 (5th Cir. 1980); *Prince v. United States*, 610 F.2d 350, 352 (5th Cir. 1980). The substance of the counterclaim and the plaintiff's claim overlapped, in that both involved the amount of tax due the government. To the extent that Jones' claim and the government's claim overlapped, the attorneys should be compensated. *See Familias Unidas v. Briscoe*, 619 F.2d 391, 406 (5th Cir. 1980); *Hardy v. Porter*, 613 F.2d 112, 114 (5th Cir. 1980). Furthermore, even if it were possible to separate the attorneys' work, the work should not be severed into "issue parcels," for the purpose of determining the fee award. *Miller v. Carson*, 628 F.2d 346, 348 (5th Cir. 1980).

The Fifth Circuit was aware that attorneys spent time on both the claim and the counterclaim, but did not limit the remand to fees incurred in defending the counterclaim. The Fifth Circuit impliedly required this result by remanding for an award of attorneys' fees for both the trial and appellate phases when the dismissal of the counterclaim was not appealed. It should be noted that most of the attorneys' fees requested in this case arose from the litigation of the attorneys' fees issue. Thus, but for the government's counterclaim, most of the fees would not have been incurred.

**D**

■ The government asserts as a fourth argument that the fee award should be limited to the maximum economic exposure of the plaintiff. The Court rejects as frivolous the government's contention that only $1500 was at stake, as the counterclaim sought over $10,000. The government argues that it was not reasonable to spend over $22,000 in attorneys' fees when less than half that amount was at stake. This Court finds that the award should not be limited by the amount of the counterclaim. *See Reneau v. Mossy Motors*, 622 F.2d 192, 196 (5th Cir. 1980). The plaintiff received much more than his freedom from liability on the counterclaim. The plaintiff established precedent for attorneys' fees in taxpayer suits. He also succeeded in establishing precedent on the issue of whether tree fellers were employees or independent contractors. Jones successfully rebuffed the government's attempt to secure a favorable settlement by its assertion of a frivolous counterclaim. In light of the results achieved by Jones, the expenditure of $22,000 was reasonable, if not a bargain.

**E**

■ Jones asks for attorneys' fees for this remand, as well as for the trial and appeal. The Fifth Circuit expressly mandated an award for the appeal, which dealt primarily with the attorney fee issue. It would be inconsistent to award fees on appeal but to deny them on the remand. The law in this circuit has consistently allowed a fee award to cover the costs of securing the compensation. *See Knighton v. Watkins*, 616 F.2d 795, 800 (5th Cir. 1980); *Johnson v. Mississippi*, 606 F.2d 635, 638–39 (5th Cir. 1979); *See also Miller v. Carson*, 628 F.2d 346 (5th Cir. 1980) (fee for post-judgment work).

**III**

■ Although the government has not contested the reasonableness of the requested fee otherwise than as above, the Court is obliged to determine if the request is "consistent with the guidelines expressed in *Johnson v. Georgia Highway Express ...* ." Accordingly, the Court will analyze the requested award in light of the following factors.

1. The time and labor required. Plaintiff asks for $22,000 attorneys' fees for a total of 396.5 hours, at an average of $57.26 per hour. The plaintiff has convinced the Court that counsel has kept detailed and accurate accounts of time spent on the case. Based on the Court's experience, the 396 hours claimed from the beginning of this litigation through the present remand is reasonable.[7] Plaintiff had to win a test

---

7. There was a stipulation at trial that $5,000 would be a reasonable fee for the trial work, which the government now denies. This amount is consistent with the plaintiff's claim

case that would have precedential value and faced an almost certain appeal. Plaintiff's counsel was required to make as complete a record as possible. It appears that every effort to avoid duplication of work was made, and younger, less experienced, lawyers were used wherever possible.[8]

2. The novelty and difficulty of the questions. Although plaintiff's original claim that tree fellers were independent contractors was not an exceedingly difficult issue, the case was brought as a test case and established precedent available to the logging industry. The issue of attorneys' fees was a case of first impression and plaintiff "should be appropriately compensated for accepting the challenge" of making new law. *Johnson*, 488 F.2d at 718.

3. The skill required to perform the legal service properly. The Chamberlain, Hrdlicka firm was selected because of their experience and reputation in federal tax matters. The firm's capable representation and careful preparation reflects their experience.

4. The preclusion of other employment by the attorney in accepting the case. The evidence showed that the Chamberlain, Hrdlicka firm was working under a fixed fee arrangement. Although no employment was precluded by conflict of interest, the firm could have spent its time on more profitable cases. The supplemental retainer agreement shows that the firm undertook to represent the PWA on the fee issue without additional charge and the case became unprofitable for them.

5. The customary fee. The firm charged its normal hourly rates, which depended on the amount of experience the particular attorney had. The average rate was $57.26 per hour, ranging from $25.00 per hour for a law student to cite check a

brief, to $150.00 per hour for a named partner to argue before the Fifth Circuit. These rates are within the customary range for specialized tax litigation in the Houston area.

6. Whether the fee is fixed or contingent. The *Johnson* court reaffirmed that fee arrangements should not be determinative of the Court's decision. "The criterion for the court is not what the parties agreed, but what is reasonable." *Johnson*, 488 F.2d at 718, quoting *Clark v. American Marine Corp.*, 320 F.Supp. 709, 711 (E.D.La.1970), aff'd mem., 437 F.2d 959 (5th Cir. 1971). Here, the parties agreed to a fixed fee with a maximum of $35,000. There was evidence that the PWA was billed and paid that amount. In light of the fee arrangement, the requested award is reasonable. *See* Part II, A & B, *supra*.

7. The time limitations imposed by the client or the circumstances. There were no limitations imposed in this case, and no premium was charged for such.

8. The amount involved and the results obtained. The plaintiff sued for a refund of $53.00. The counter claim was for a little over $10,000.00. "Although the Court should consider the amount of damages ..., that consideration should not obviate court scrutiny of the decision's effect on the law." *Johnson*, 488 F.2d at 718. *See Reneau v. Mossy Motors*, 622 F.2d 192, 196 (5th Cir. 1980). The plaintiff achieved favorable results in this case, establishing precedent for logging contractors, and making new law on attorneys' fees in tax cases. The fee requested is warranted by the results obtained and the amount ultimately involved. *See* Part II D, *supra*.

9. The experience, reputation and ability of the attorneys. The Chamberlain, Hrdlic-

---

8. for over $11,000 for the trial phase, because the $5,000 figure was in the nature of a settlement for $6,500 in fees incurred up to the days immediately preceding the trial. The remaining $4,500 was incurred at the trial itself, and in briefing the district court on the attorneys' fees issue.

8. The requested fee award does not include compensation for any services performed by Mr. Phillip Leach, a corporate lawyer in Diboll, Texas with over 20 years experience. Mr. Leach spent some 50 hours on the case, but it was not clear whether his work was in the nature of "overseeing" the Chamberlain, Hrdlicka firm or not.

ka firm specializes in tax litigation. The lead counsel in the case, Robert I White, has over 22 years' experience as a trial lawyer and certified public accountant. The firm demonstrated their skill and experience in the preparation of the case and presentation to the Court.

11. The undesireability of the case. Although tax litigation is not "undesireable" in the same sense that civil rights litigation may be, the Court is persuaded that this particular suit may make it more difficult for the Chamberlain, Hrdlicka firm to deal with the Department of Justice in their normal practice.

12. Awards in similar cases. Since this is a case of first impression, the Court does not have the benefit of comparing the requested award to awards in similar cases.

In conclusion, the Court finds that the attorney fee award of $22,705.00 is reasonable and consistent with the guidelines expressed in *Johnson v. Georgia Highway Express.*