Gloria SMITH and Albert Brooks Friedman, Plaintiffs-Appellants,

v.

SOL D. ADLER REALTY COMPANY, a corporation, Sol D. Adler, Mr. and Mrs. John C. Rasulis, Defendants-Appellees.

No. 17568.

United States Court of Appeals, Seventh Circuit.

Nov. 27, 1970.

Rehearing Denied Feb. 18, 1971.

Sherman, Schachtman & Stein, Chicago, Ill., for plaintiffs-appellants; Albert Brooks Friedman, Jack G. Stein, Seymour J. Mansfield, Chicago, Ill., of counsel.

Edward J. Hladis, Robert J. Nolan, Patrick W. Dunne, Chicago, Ill., for defendants-appellees; Nolan, O'Malley & Dunne, Chicago, Ill., of counsel.

Before SWYGERT, Chief Judge, HASTINGS, Senior Circuit Judge, and CUMMINGS, Circuit Judge.

HASTINGS, Senior Circuit Judge.

On this appeal we are concerned with the charge of a racially motivated refusal to sublease a rental apartment to a Negro citizen.

A complaint was filed by plaintiffs-appellants in the United States District Court for the Northern District of Illinois on January 20, 1969, seeking a declaratory judgment, together with equitable and other appropriate relief against defendants-appellees.

The complaint is grounded on the Civil Rights Act of April 9, 1866, 14 Stat. 27, as amended and presently appearing in Title 42, U.S.C.A. § 1982, which provides: "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold and convey real and personal property."

The complaint is further brought under the provisions of the recently enacted Civil Rights Act of 1968, Pub.L. 90-284, Title VIII, § 801 et seq., April 11, 1968, 82 Stat. 81 et seq., 42 U.S.C.A. § 3601 et seq. Title VIII is the Fair Housing Title, and the relevant part is set out in the margin herein.[1]

The complaint further grounds jurisdiction on the result reached by the Supreme Court in Jones v. Alfred H. Mayer Co., 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968).

---

1. "§ 3604.  *Discrimination in the sale or rental of housing*

As made applicable by section 3603 of this title and except as exempted by sections 3603(b) and 3607 of this title, it shall be unlawful—

(a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, or national origin.

(b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, or national origin.

\*   \*   \*   \*   \*

(d) To represent to any person because of race, color, religion, or national origin that any dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available.

\* \* \*."

As of January 9, 1969 the relationship of the parties to this subsequent litigation follows. Plaintiff Albert Brooks Friedman, a lawyer, was a lessee-tenant residing in apartment 1A at 1959 West Hood Street, Chicago, Illinois. His lease ran until September 30, 1969 and called for a monthly rental of $155. He desired to sublet his apartment beginning January 31, 1969, that being the date he was moving into a newly purchased home.

Plaintiff Gloria Smith, a Negro, 22 years of age, resided in an apartment in Maywood, Illinois in a building owned by her mother-in-law. She was married to but separated from her husband and had a divorce action pending in court which she had filed against him. They were the parents of an eleven months old son and Gloria had his care and custody. Her estranged husband lived apart from her in another apartment with his mother in his mother's building. No further action had been taken in the pending divorce proceeding during the trial of the instant case. Her husband was a computer programmer with Peoples Gas Company and had agreed to pay her $35.00 monthly child support when she moved from her apartment. Gloria was graduated from Xavier University in Louisiana with a B.S. degree. She was employed in the Military Section of the Defense Department at O'Hare Airport at an annual salary of $7000.00.

Defendant Sol D. Adler was president and active head of corporate defendant Sol D. Adler Realty Company in Chicago, the managing agent for the apartment building in which the Friedman apartment was located.

Defendant John C. Rasulis was employed by the Adler Company as a janitor and engineer at the apartment building in question.

Defendant Rose Rasulis, wife of John C. Rasulis, was not a salaried employee of the Adler Company. However, she assisted her husband in his work about the building. She interviewed the applicants for rental apartments, and either she or her husband were required to "see" or "meet" all applicants before they were given an application. She showed prospects the apartments to be rented and forwarded completed applications to Adler. Neither she nor her husband had authority to accept or reject rental applications.

In their complaint, plaintiffs specifically sought a declaration of Gloria's right to rent the Friedman apartment at $155 per month until the termination of the sublease and thereafter at a monthly rental of $170 or whatever rent white tenants paid for similar accommodations. They sought temporary and permanent injunctive relief against defendants from the denial of such civil rights together with a judgment for damages for loss of civil rights and mental anguish in the sum of $1000 and for additional punitive damages of $1000.

Following a trial to the court and the filing of findings of fact and conclusions of law, a final judgment and decree was entered by the trial court adverse in all respects to plaintiffs. Plaintiffs were thereby denied injunctive relief and damages and their complaint was dismissed for want of equity. Plaintiffs appealed. We reverse.

The following additional facts, largely undisputed, seem conclusively established by our review of the entire record in this case.

In early December, 1968, Schwartz, a tenant of a two bedroom apartment in the subject building, desired to move into a one bedroom apartment and heard of the imminent Friedman vacancy. After viewing the Friedman apartment, Schwartz expressed a desire to take it over as soon as he could sublet his own apartment. About this time Friedman had advised Adler of his plans to sublet and move and Alder promised to assist him and have Rasulis and his wife assist, but warned Friedman that the rental obligation was his and recommended that he advertise. Schwartz also talked

to Adler about it. Adler suggested he contact Rasulis.

Friedman told Schwartz he would delay advertising for about a month so that Schwartz might attempt to find a sublessee. Schwartz was not then nor was he at the time of trial ready and able to rent from Friedman. On January 8, 1969, Friedman again talked to Adler by telephone and told him he was moving, wanted to sublease and that Schwartz had not been able to sublet his own apartment. Adler replied that this was their (Friedman's and Schwartz's) problem and that he was still liable on his lease. Adler advised Friedman that the rent on his apartment would increase to $170 per month after his lease expired on September 30, 1969, and that there had been no outside applications to rent it.

Friedman had been acting as attorney for Gloria in her pending divorce action. Susan Mansfield, a cousin of Friedman who lived two blocks away from him, worked at the same place as Gloria and was her friend. Gloria learned of the approaching Friedman apartment vacancy from Friedman and Mrs. Mansfield about January 6, 1969.

During the evening of January 9, 1969, Gloria and Mrs. Mansfield called at the Friedman apartment. While there Friedman met Schwartz in the hall and told him he had a prospect for his apartment. Schwartz told Friedman he had not rented his own apartment.

Friedman then went to the Rasulis apartment and told Mrs. Rasulis he had a prospect for his apartment and asked her for an application. She replied: "I have to see the applicant. I want you to bring her here to me. I have to see her. I can't give you a blank application."

Friedman left and then returned to Mrs. Rasulis with Gloria. After an introduction by Friedman, Mrs. Rasulis said to Gloria: "You can't afford to rent this apartment." Upon being advised of Gloria's $7000 salary, Mrs. Rasulis repeated her statement to Gloria and added that the rent was going up to $185 and she wouldn't be able to afford it after that. After Friedman quoted Adler's statement that the rent increase, after expiration of the present lease would be to $170, Mrs. Rasulis countered with the statement that the Friedman apartment had already been rented. When Friedman replied that Adler had told him the day before there were no prospective tenants for the apartment, she permitted Gloria to fill out an application. Mrs. Rasulis again stated she would not accept the application and that the apartment was already rented. On Friedman's insistence, Mrs. Rasulis sent the application to the Adler Company office and three days later Gloria mailed a rental deposit check of $310 to the Adler Company.

On January 13, 1969, Friedman telephoned Alder and inquired of the status of Gloria's application. Adler replied that he had already rejected Gloria as a tenant. When Adler expressed doubt that her income was adequate, Friedman offered to guarantee the rental for the balance of the lease or to place the balance in escrow for Adler. Adler then stated that his company had "a policy of not renting to individuals who, because of employment, could not provide proper parental care to small children." Adler also said on occasion that he did "not rent to 21 year old divorcees with an infant of ten months of age where the woman has to be away at work to earn a living;" that since 1941 they had "followed a personal policy of not renting to employed mothers with infant children;" and that there "are no people renting there with infant children where the mother and father are employed."

On trial, after plaintiffs were granted leave to inspect tenant applications on file with the Adler Company, it was shown that two present married white tenants, the Murrays and the Rothchilds, each had an infant child and both parents were employed. Adler then explained that he "must of had evidence [of how the infant child was to be taken care of] to accept them."

We deem the following continuing record to be of significant interest:

"Q. Now, Mr. Adler, knowing * * * that her [Gloria Smith's] child will be well taken care of by a reliable tenant and a mother of two children in your building [referring to Mrs. Judy Stern, a tenant of the building] and knowing that any money that you want, that you require as security so you have no financial worries, will be deposited in Escrow or with you totally, will you now accept Mrs. Smith as a tenant in your building?

"A. Why wasn't this told to me when I asked you about it, who was going to take care and that was why I was making a rejection. [sic]

"Q. Will you now accept her as a tenant in your building, sir?

"A. I have promised this apartment to Mr. Schwartz, who is one of my present tenants. I promised him long before you had any applicant for your apartment. We do give preference at all times to our own tenants in the building.

"Q. You will not accept her as a tenant, then, will you, sir?

"A. Personally I wouldn't want to, no.

"Q. You wouldn't want to.

Well, Mr. Schwartz is not ready, willing and able to take over that lease of February 1st; is that correct?

"A. Mr. Schwartz is ready, willing and able because long before you had an applicant—I spoke to you on the phone and I said, 'Do you want out? Mail in your lease with a letter telling me that you want out and I will cancel your lease and return it to you.' My intention was to give it to Mr. Schwartz. This is long before you had any prospect for the apartment."

Substantially all of the foregoing was found by the trial court in its findings of fact.

At the conclusion of the trial on January 31, 1969, the trial court rendered a brief oral opinion from the bench denying all injunctive relief and dismissing the action for want of equity. Defendants' counsel was directed to prepare and submit findings of fact and conclusions of law.

The trial court concluded its oral opinion with the following statement:

"In my own judgment, my own sincere judgment, I think that these people *did not want to rent to her because she was colored.* But I think while they did not want to rent to her, that they had good reason and would have, in my judgment, turned down a white woman under the same circumstances. I do not believe the *total* factor is one of discrimination. I do not think that is *the sole reason for the discrimination.* * * * I am convinced that when the court starts reaching into interfering with people and their rights, and setting up family rules and regulations, that everybody must abide by, I think the colored must abide by that the same as the others. That is my viewpoint of it." (Emphasis added.)

On February 6, 1969, the trial court filed and entered of record the proposed findings of fact and conclusions of law tendered the previous day by defendants. It then entered its judgment and decree.

We set out findings Nos. 13, 14, 15, 16 and 17, which read as follows:

"13. The application of Gloria Smith was rejected because she is a single mother with an eleven month old child. This action is consistent with the standard policy of the realty corporation in this regard. This limitation is reasonable and does not conflict with any provision of the Civil Rights Act. There is no proof that the defendants did not apply this policy uniformly to all individuals regardless of race, color or creed. The defendant Sol D. Adler testified that he would not have rented said apartment

to any single woman with an infant child whether she was white or of any other color. The court finds that was a true statement.

"14. The application of Gloria Smith was not rejected because she is a Negro.

"15. The defendants have a policy of giving preference in renting apartments to their present tenants, such as Mr. and Mrs. William Schwartz, and had made a promise to William Schwartz to make said apartment available to him as soon as William Schwartz could rent his apartment.

"16. The only genuine plaintiff in this cause is Albert Brooks Friedman who is seeking to use his client, Gloria Smith, and the civil rights statutes as a blind from which to shoot down his lease with defendants and which lease he seeks to void because he wishes to move out of his apartment and into a home he has just purchased in Glencoe, Illinois.

"17. *The court is of the opinion that the evidence shows defendants were only too happy to find a valid excuse for denying the rental of said apartment to Gloria Smith but that if Gloria Smith had qualified the defendants would have reluctantly accepted her. The court further observes that the objections to Gloria Smith based upon insufficient income and late deposit are without merit.*" (Emphasis added.)

### I

We first consider an ultimate question of law. In determining whether a Negro citizen was deprived of her civil rights because of a racially motivated refusal to permit her to sublease a rental apartment, did the trial court use an impermissible legal standard in arriving at its decision?

It is clear beyond dispute that Adler relied upon three non-racial reasons for refusing to rent to Gloria, (1) late de-

posit on her rental application, (2) inadequate income, and (3) a policy against renting to employed parents with infant children.

In its finding No. 17, the trial court found "that the objections to Gloria Smith based upon insufficient income and late deposit are without merit." We agree. The record so dictates.

Assuming *arguendo* that Adler had an established policy against renting to employed parents with infant children and applied his policy uniformly to all persons without regard to race, did the trial court's further findings prevent this policy from finding a haven of refuge behind the Civil Rights Act of 1866 and the recent Act of 1968?

As above pointed out, the trial court stated in its oral opinion that "In my own judgment, my own sincere judgment, I think these people did not want to rent to her because she was colored." We agree thus far. But the trial court goes on to say, in substance, that even so, Adler had another good reason for his refusal and that the racial ground was not the sole reason for the discrimination nor was the total factor one of discrimination. In its following written finding No. 17, the trial court found that "defendants were only too happy to find a valid excuse for denying the rental of said apartment to Gloria Smith * * *."

In Jones v. Alfred H. Mayer, 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968), the Court held that § 1982 of the Act of 1866, as amended, *supra*, applies to *all* racial discrimination in the sale or rental of property, private as well as governmental. The Court found the language of § 1982 to be plain and unambiguous and that Congress meant exactly what it said, i. e., that "all citizens * * * shall have the same right * * * as is enjoyed by white citizens" to lease real property. We read this to hold that the "same right" means that race is an impermissible factor in an apartment rental decision and that it cannot be brushed aside because

it was neither the *sole* reason for discrimination nor the total factor of discrimination. We find no acceptable place in the law for partial racial discrimination.

We, therefore, conclude that the trial court erred as a matter of law in erecting and following such an impermissible standard.

## II

We finally consider whether any of the foregoing critical findings Nos. 13, 14, 15, 16 and 17 are clearly erroneous under Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A.

It was clearly shown at trial from Adler's accepted applications for rental apartments by the two white employed married couples, each with an infant child to be cared for by some one employed for that purpose, that his so-called *uniformly* applied policy was discriminatory as applied to Gloria. She was married, though separated from her husband, had an infant child, was employed and had another tenant in the same apartment building engaged to care for her child while she was at work. Thus, the "valid excuse" found by the trial court was in fact an invalid excuse.[2]

Adler required all applicants to be personally seen and interviewed by Mr. or Mrs. Rasulis before being given a rental application. The color of an applicant became evident at the outset and required no inquiry or further statement. It becomes obvious from the total picture presented by this record that Gloria's application was denied in large measure because she was a Negro.

Friedman waited a month for Schwartz to sublease his apartment, and only after then finding that Schwartz had been unable to do so and that Adler continued to look to Friedman for the latter's rent, did Friedman undertake to rent to Gloria. Further, it is somewhat apparent from the rather reckless finding in No. 16, *supra,* and in the trial court's conclusion No. 4 that plaintiff's action constitutes a misuse of the civil rights statutes and an abuse of legal process, that such results all too frequently flow from the excessive enthusiasm of trial counsel when requested to prepare and tender proposed findings and conclusions.

Our careful examination of the entire record leaves us with the definite and firm conviction that a mistake has been committed. The foregoing findings under consideration, except No. 17, are found to be clearly erroneous "when although there is evidence to support [them], the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

■ The judgment and decree of the district court is reversed and this cause is remanded to such court with directions (1) to enter a declaratory judgment under the Civil Rights Act of 1866, *supra,* favorable to plaintiffs consistent with this opinion; (2) in particular to order and direct defendants Sol D. Adler and Sol D. Adler Realty Company, a corporation, to tender to plaintiff Gloria Smith a lease on an apartment in the subject apartment building, of such size and accommodation equal to the apartment formerly under lease to plaintiff Friedman, for a period of eight months at a monthly rental of $155, with the right and privilege of the said Gloria Smith to renew the same thereafter for such period of time and at such rental as heretofore granted to white tenants; (3) to enjoin defendants from interfering with plaintiff Gloria Smith's right to peaceably enjoy the use of such premises during such time as such lease shall remain in full force and effect; and (4)

---

**2.** The only evidence of a prior uniform established policy are self-serving declarations by Adler to Friedman at the time when Adler was shifting his position in search of non-racial reasons for not renting to Gloria.

to award plaintiff Gloria Smith a judgment against defendants Sol D. Adler and Sol D. Adler Realty Company, a corporation, in such sum, not to exceed $1000, as the district court in its discretion may determine will fairly and properly compensate such plaintiff for the loss of her civil rights and any mental anguish suffered by her.

Reversed and remanded with directions.