**William Eugene HUGHES and Sue Mae Hughes, Plaintiffs,**

v.

**Harry DYER, d/b/a Harry Dyer Custom Builder.**

**No. 73 CV 258–W–1.**

United States District Court, W. D. Missouri, W. D.

July 16, 1974.

Basil L. North, Jr., Kansas City, Mo., for plaintiffs.

Warren S. Earhart, Grandview, Mo., for defendant.

## MEMORANDUM AND ORDER

JOHN W. OLIVER, District Judge.

### I.

This action was brought pursuant to 42 United States Code, § 1982 and sought equitable relief and damages for the refusal of defendant to sell residential property to the plaintiffs, allegedly because they are Negro.[1]

1. The complaint also alleged jurisdiction under 42 U.S.C. § 3604. However, in Pretrial Order No. 2 plaintiffs dismissed that portion of the case and conceded that defendant was exempt under 42 U.S.C. § 3603. Plaintiffs have also abandoned their efforts to have this action declared a class action pursuant to Rule 23 of the Rules of Civil Procedure. As will be later noted, that determination has an impact on the question involving equitable relief.

The case was tried before this Court without a jury. As is usual in this type of cases, the case turns on questions of fact rather than law. Our findings of fact reflect that the conflicts in the testimony of the witnesses in regard to the relevant and material questions of fact have been resolved in favor of the plaintiffs and against the defendant. In short, in our application of familiar standards of burden of proof and credibility of the witnesses, we accept the testimony of plaintiffs' witnesses and reject the testimony of the defendant's witnesses. We accordingly conclude that plaintiffs are entitled to an appropriate judgment under the applicable law.

## II. FINDINGS OF FACT

1. Plaintiffs William Eugene Hughes and Sue Mae Hughes are members of the Negro race.

2. Defendant Harry Dyer is a member of the Caucasian race.

3. Defendant, after retiring in 1971, entered the business of a "custom builder." In June, 1972, he completed and sold two houses.

4. Later, and during the summer of 1972, defendant began construction on two additional houses in Belton, Missouri; a bi-level house at 16605 McKinley, and a tri-level house at 16607 McKinley.

5. On November 7, 1972 plaintiffs received notice from the Land Clearance Authority requiring them to vacate their home within sixty days.

6. Plaintiffs contacted Ms. Wirth of McClory Realtors, one of the two real estate companies with whom defendant's two houses were listed, who showed plaintiffs the house at 16607 McKinley by flashlight on the evening of November 9, 1972, and again in the daylight on November 14, 1972. While viewing the house, plaintiffs observed a sign in front of the house with defendant's name and phone number and decided to attempt to purchase the house directly from him to avoid a realtor's commission.

7. On November 15, 1972, plaintiff Sue Mae Hughes, without disclosing to the defendant that she had already seen the house, telephoned defendant and asked to see the tri-level house. Defendant offered to show it that night. There was no electricity in the house and defendant offered to provide lighting by which the house could be viewed. Plaintiffs could not view the house on November 15, 1972, but made an appointment for the evening of November 16, 1972.

8. On November 16, 1972, plaintiffs arrived at the appointed time and looked at the house. The Hughes said they wanted to buy the house and offered to make a down payment of twenty thousand dollars. Defendant stated that he had to check out the financing and said he would call plaintiffs the next day. Defendant did not indicate that the house was not for sale or that he intended to occupy the house as his own residence.

9. On November 17, 1972, the defendant did not call. Plaintiff Sue Mae Hughes called defendant and he then stated for the first time that he would not sell the property because he and his wife had decided to move into it. Defendant did not offer to build a similar home for the plaintiffs on some other site. Nor did defendant offer to sell plaintiffs the house which he was constructing at 16605 McKinley.

10. Defendant refused to sell any house, including but not limited to 16607 McKinley to plaintiffs for the reason plaintiffs were Negro. We expressly reject defendant's own testimony and the testimony of other witnesses called by the defendant to the effect there were other reasons for the defendant's refusal to sell, including but not limited to some alleged difficulty in regard to

being able to get his wife's name on a deed.

11. Plaintiffs thereupon began to look at other houses. On November 22, 1972, plaintiffs contacted Ms. Davis of Crest Realty. When they informed her that they were looking for a home similar to 16607 McKinley, Ms. Davis indicated that Crest Realty still had the residence listed for sale. Plaintiffs then made a $500 earnest money deposit and signed a contract to buy the house at 16607 McKinley.

12. On November 23, 1972, Mr. Spangler of the Crest Realty called defendant and said that he had a sales contract to be signed. Defendant said, "Come out." When Spangler arrived, defendant examined the contract. He saw that the prospective buyers were the Hughes. He then told Spangler that if he had wanted to sell the house to the Hughes, he could have sold it previously to them direct and with no sales commission.

13. Later in the same day, Ms. Davis, of Crest Realty, returned with Spangler and informed defendant that it was unlawful to refuse to sell real property on the basis of race. Defendant replied that the property was his and he would sell to whomever he chose. As is now apparent from all the facts and circumstances, Ms. Davis correctly understood from what defendant said to her that his reason for refusing to sell to plaintiffs was plaintiffs' race.

14. The testimony of plaintiffs' witness Stauffer, an employee of the Missouri Commission on Human Rights, who interviewed defendant on December 5, 1972, fully corroborates the testimony of plaintiffs and their other witnesses. Mr. Stauffer's written memorandum of his interview with defendant [Court Exhibit 3] shows that defendant had refused to sell because "Everyone has to do what he thinks right." He also expressed his belief that the plaintiffs had unfairly "picked on" him when there were other larger builders in the area.

15. Defendant suggested several findings of fact to the effect, for example, that plaintiff went to Crest Realty on November 22, 1972, "for the purpose of furthering their effort to create a situation in which they could contend that defendant was refusing to sell to them because of race, for the purpose of this litigation."

We expressly reject all defendant's suggested findings in that regard, both as a matter of fact and as a matter of law. There is not a scintilla of evidence in this record that plaintiffs were hunting a lawsuit rather than a house. Hamilton v. Miller, 477 F.2d 908 (10 Cir. 1973), a case cited and relied upon by defendant in another connection, properly pointed out in footnote 1 on page 910 that similar criticism, even if true, was not legally relevant. Chief Judge Lewis in that case appropriately directed attention to Evers v. Dwyer, 358 U.S. 202, 294, 79 S.Ct. 178, 3 L.Ed.2d 222 (1958), where the Supreme Court said it was "not significant" that a black man boarded a bus for the purpose of initiating litigation attacking segregated operation of a bus system.

16. Subsequent to defendant's refusal to sell, plaintiffs eventually purchased a home from other persons for $36,500.

17. As a direct result of defendant's refusal to sell on the basis of their race, plaintiffs suffered humiliation and a deprivation of their civil rights, for which they are entitled to compensatory damages.

18. Plaintiffs, under all the facts and circumstances, are entitled to punitive damages for reasons which will be stated in part IV of this memorandum opinion.

19. Attorney's fees in an appropriate amount will be awarded plaintiffs for reasons stated in part IV of this memorandum opinion.

## III. CONCLUSIONS OF LAW

Section 1982, Title 42, United States Code, has long provided that "All citizens

of the United States shall have the same right, in every State . . ., as is enjoyed by white citizens thereof to . . . purchase . . . real and personal property." In part VI of Standard Pretrial Order No. 2 the parties agreed with this Court's approval that:

The following issues of fact, and no others, remain to be litigated upon the trial:

Whether defendant by refusing to sell to plaintiffs a certain dwelling house that he was constructing so refused because plaintiffs were Negroes or so refused because he wanted to keep the property for a residence for himself and wife or so refused because the property belonged to both defendant and his wife and his wife's consent to sell was necessary and was refused because she had planned and wanted to occupy it as a home.

Whether the refusal to sell was wilful and in gross disregard of plaintiffs' rights.

The amount of damages sustained by plaintiffs.

The amount of attorney's fees that should be allowed, if any.

In light of our findings of fact, it is clear that determination of the issue of liability under Section 1982 is not a difficult task. We have found as a fact that defendant did refuse to sell to plaintiffs because they were Negro. We have expressly rejected the notion that the defendant, until he learned of plaintiffs' desire to purchase the property, actually wanted to keep the property for a residence for himself or that he would have had any more difficulty in obtaining the consent of his wife to add her name to the deed than he had encountered in earlier sales of similar property to white citizens. Other than Hamilton v. Miller, supra, which we have mentioned, and which simply held that the district court's ultimate factual findings that there was no actionable Section 1982 discrimination

under the particular factual circumstances of that case were not clearly erroneous, defendant directs our attention to only one other federal decision.

■ · Defendant cites Bush v. Kaim, 297 F.Supp. 151 (N.D.Ohio, 1969), to support a suggested conclusion of law that: "An owner can refuse to sell to anyone, negro or white, for any reason he chooses, so long as the motivating reason for this decision is not the individual's race or color." We do not believe that Bush v. Kaim may properly be read to support such a broad legal conclusion. But, if it could be so read, we would not be persuaded to follow that case in light of the approval most recently given to the Seventh Circuit's opinion in Smith v. Sol D. Adler Realty, 436 F.2d 344 (7th Cir. 1971) by our controlling court in Williams v. The Matthews Company, No. 73–1765, 499 F.2d 819 (8th Cir. 1974). In *Williams*, the Eighth Circuit held that:

Race is an impermissible factor in real estate transactions under both 42 U.S.C. § 1982 and 42 U.S.C. § 3604 and "cannot be brushed aside because it was neither the *sole* reason for discrimination nor the total factor of discrimination." Smith v. Sol D. Adler Realty, 436 F.2d 344, 349–350 (7th Cir. 1970). [Id. at 826]

In Sol D. Adler Realty, *supra*, 436 F.2d at 349–350, to which the Eighth Circuit directed specific attention by local citation in *Williams*, the Seventh Circuit concluded that the district court had used "an impermissible legal standard" when it based its judgment for a defendant on the notion that a defendant could not be held liable if he had "another good reason for his refusal and [if] the racial ground was not the sole reason for the discrimination nor . . . the total factor . . . of discrimination."

It was in connection with its rejection of that impermissible legal standard that the court concluded that a violation of

Section 1982 may not "be brushed aside because it was not the *sole* reason for discrimination nor the total factor of discrimination" [emphasis the court's]. We therefore reject defendant's broad reading of Bush v. Kaim and conclude that plaintiff, under the facts as we have found them, has established defendant's liability under Section 1982.

## IV.

■ The remaining questions presented relate to the relief which should be granted plaintiffs. Plaintiffs' suggestion that "plaintiffs are entitled to a permanent injunction restraining defendant from wrongfully refusing to sell houses he builds on the basis of race in the future" is untenable under the circumstances for two reasons. First, the evidence established that defendant has decided to get out of the house building business and to go back into full retirement. There was no evidence to the contrary. Second, plaintiffs seek no personal equitable relief and, in light of the fact that plaintiffs abandoned their class action, there is no occasion to consider the rights of anyone other than plaintiffs. For the reasons stated, no equitable relief will be granted under the circumstances.

In regard to damages and other relief, plaintiffs point out that they suffered "mental and emotional distress" and "were required to spend an additional $5,500 to purchase a suitable house." Specifically, plaintiffs contend that they are entitled to $10,000 compensatory damages, $40,000 exemplary damages and attorney's fees in the amount of $3,780.-00. While we agree that plaintiffs are entitled to recover compensatory damages, exemplary damages and attorney's fees, we do not agree that the amounts suggested by plaintiffs are reasonable under the circumstances.

Jones v. Alfred H. Mayer Co., 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968), and Sullivan v. Little Hunting Park, 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.

2d 386 (1969), removed any lingering doubt that Section 1982, standing independent from more recent Civil Rights legislation, must be read to provide a private right for compensatory damages. Sullivan v. Little Hunting Park, *supra*, concluded that "both federal and state rules on damages may be utilized, whichever better serves the policies expressed in the federal statutes."

In particular civil rights actions compensatory damages are easily measurable in terms of phone bills, lost work, and other expenses involved in finding new housing. But often times they are not. For example, in this case, after defendant's refusal, plaintiffs bought another home for $36,500. Plaintiffs claim they are entitled to the $5,500 difference in purchase prices on the theory that defendant's actions forced them to incur this additional expense in buying a house. At trial, however, it developed that plaintiffs' new home was larger and in certain respects more valuable than defendant's property. Thus, though plaintiffs may in fact have paid more in the second transaction, and, conceivably may have received less for their money, any actual damage is highly speculative and incapable of precise calculation.

■■ Another important element of plaintiffs' right to compensatory damages, however, involves recompense for humiliation, emotional distress and for deprivation of their civil rights protected by Section 1982. Such compensatory damages are similarly incapable of exact measurement, but the right to recover exists even though the discrimination "was perpetrated in a courteous manner and was not vindictive or abusive." Steele v. Title Realty Company, 478 F.2d 380, 384 (10th Cir. 1973). After careful consideration of the testimony and exhibits, we conclude that plaintiffs are entitled to $1,500.00 as compensatory damages for actual out-of-pocket expenses and emotional distress, humiliation, and loss of civil rights, caused by defendant's discrimination.

**1311**

■ While the Supreme Court has not ruled a case in which punitive damages have been awarded, the cases collected in the annotation entitled "Punitive Damages in Actions for Violation of Federal Civil Rights Acts," 14 A.L.R. Fed. 608, 616 lists the numerous cases from all eleven Circuits in which it has generally been held or recognized that punitive damages may and should be awarded under appropriate circumstances in private actions to recover for violations of federal Civil Rights statutes. Thus, Chief Judge Harris in Davis v. Board of Trustees of Arkansas A & M College, (E.D.Ark.1967) 270 F.Supp. 528, 531, held that a § 1983 action "sounds in tort and exemplary or punitive damages may be awarded." The Eighth Circuit affirmed, 396 F.2d 730 (8th Cir. 1968), and certiorari was denied, 393 U.S. 962, 89 S.Ct. 401, 21 L.Ed.2d 375 (1968).

Lee v. Southern Home Sites Corp., 429 F.2d 290 (5th Cir. 1970), an earlier opinion in a case recently relied upon by our Court of Appeals in *Williams,* involved another § 1982 action. The rationale of that opinion makes clear that principles applicable to § 1983 are equally applicable to § 1982 actions. In Wright v. Kaine Realty, 352 F.Supp. 222 (N.D. Ill.1972) the cited opinion in Lee v. Southern Home Sites Corp., was read as holding that punitive damages may be awarded in § 1982 actions. *Wright* further concluded, we believe properly, that while 42 U.S.C. § 3604 (the Civil Rights Act of 1968) did not preempt the power to award punitive damages in a § 1982 action, the limitation in § 3612(c) should be given appropriate consideration in determining the amount of any punitive damage award in a particular case.

■ Mr. Justice Brennan's opinion concurring in part and dissenting in part in Adickes v. Kress & Co., 398 U.S. 144, 188, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), also illustrates the close relationship between § 1983 actions and actions under § 1982. That opinion, see 398 U.S. at 233–234, 90 S.Ct. at 1642, is one of the few opinions which articulates the standards to apply in determining whether punitive damages should be awarded in a particular Civil Rights action. We quite agree, as there stated, that a plaintiff "must show more than a bare violation" of the particular Civil Rights statute involved. We also agree that a particular plaintiff "need not show that the defendant specifically intended to deprive him of a recognized federal right, as is required by the word 'willfully' in 18 U.S.C. § 242, see Screws v. United States [325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945)]." Application of such a standard would improperly require a finding of criminal rather than civil liability. Mr. Justice Brennan expressed the view, which we share, that one who discriminates on the basis of race after authoritative Supreme Court of the United States decisions and after the specific enactment of one of the recent Civil Rights Acts must be said to do so "with reckless disregard as a matter of law" and therefore may be found liable for punitive damages.

In that case, as in this case, there was clear and convincing evidence that the defendant's attention was specifically called to the possibility of liability under a federal Civil Rights Act. Here, the defendant's reaction to his obligation to comply with the Civil Rights Act was to express dismay as to why plaintiffs would "pick on him." Any thought that he should comply with the law of the land apparently did not occur to him.

■ We find and conclude that this is a proper case for awarding punitive damages and that appropriate consideration should be given the limitation on the amount of punitive damages which should be awarded as expressed by the Congress in the Civil Rights Act of 1968. We believe the award of punitive damages in cases like this case will carry a message to all persons subject to the command of § 1982 which has long provided that "all citizens of the United States shall have the same right, in every State . . . as is enjoyed by white citizens thereof to . . . purchase . . . real and personal property." Plaintiffs accordingly will be

**1312**

awarded punitive damages in the amount of $1,000.00.

 Any question concerning the award of attorney's fees in civil rights actions has been resolved in this Circuit by our controlling court's recent opinion in Fowler v. Schwartzwalder, No. 73–1129, 498 F.2d 143 (8th Cir. 1974). The reliance upon and approval of Knight v. Anciello, 453 F.2d 852 (1st Cir. 1972), and Lee v. Southern Home Sites Corp., 444 F.2d 143 (5th Cir. 1971) and the discussion of Mills v. Electric Auto-Lite Co., 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed. 2d 593 (1970), and Newman v. Piggie Park Enterprises, 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968) by the Eighth Circuit in *Fowler* makes it redundant to discuss the existence of discretionary power to award attorney's fees in Civil Rights actions under the "private attorney general doctrine" of *Newman.*

 Accordingly, we find that plaintiffs are entitled to an award of reasonable attorney's fees. In determining the amount of this award, we must consider the time required, the complexity of the legal and factual issues, the amounts involved and the results obtained. *Knight v. Anciello, supra,* approved by the Eighth Circuit in *Fowler,* suggests that appropriate comparison of the fee schedule set forth in the Criminal Justice Act of 1964, 18 U.S.C. § 3006A(d), without the maximum limitation, should be given consideration. Review of the record of this case in accordance with those standards, and consideration of the bill of time submitted by plaintiffs' attorney, leads us to find and conclude that plaintiffs should be awarded attorney's fees in the amount of $2,-500.00.

### V.

For the reasons stated, it is

Ordered that the Clerk, pursuant to Rule 58 of the Rules of Civil Procedure, shall forthwith prepare, sign and enter a judgment for the plaintiffs against the defendant in the amount of $1,500.00 compensatory damages, $1,000.00 exemplary damages, and $2,500.00 attorney's fees, a total of $5,000.00, plus costs.