**Bonnie WALKER, Plaintiff,**

v.

**Mona FOX et al., Defendants.**

**Civ. A. No. 74–107.**

United States District Court,
S. D. Ohio, E. D.

April 18, 1975.

---

**1304**

Alexander M. Spater, Columbus, Ohio, for plaintiff.

John P. Bessey, James B. Dobbs, Columbus, Ohio, for defendants.

### OPINION AND ORDER

DUNCAN, District Judge.

Plaintiff Bonnie Walker instituted this action on March 5, 1974, pursuant to Title VIII of the Civil Rights Act of 1968, 42 U.S.C. § 3601 *et seq.* and the Civil Rights statutes, 42 U.S.C. §§ 1981 and 1982. She alleges racially discriminatory housing practices by defendant Mona Fox, landlady of a rooming house at 1387 Neil Avenue, Columbus, Ohio, and by defendant Neil Avenue Baptist Church, owner of the property at 1387 Neil Avenue. Jurisdiction of this Court is had under 42 U.S.C. § 3612 and 28 U.S.C. § 1343. The case came to trial on February 26, 1975; the Court, having carefully considered the evidence and the arguments of counsel, sets forth in this opinion its findings of facts and conclusions of law pursuant to Rule 52(a), Fed.R.Civ.P.

Defendant Mona Fox in response to an advertisement in a local newspaper rented a rooming house at 1387 Neil Avenue from the owner of the property, defendant Neil Avenue Baptist Church. The Church had decided it had no immediate use for the house, and rented it in order to offset its expenses on the property. Although it was aware Mona Fox would be using it for a rooming house, the Church's rental fee to her of $120.00 per month was based on its estimate of

its expenses and not on the number of renters obtained by Mrs. Fox.

One of defendant Fox's roomers was the plaintiff, a white university student,[1] who moved into the rooming house at the end of September, 1973. Ms. Walker testifed that shortly after she moved into the rooming house Fox informed her that should a black person inquire about rooms for rent, she should either not answer the door or tell the black person that no rooms were available. Ms. Walker further testified that several days after this initial conversation a black applicant did come to the house. Mrs. Fox, after answering the door, came back and informed Walker she had told the black man that the room advertised had already been rented. Ms. Walker stated that in fact the room was still available.

In addition to Ms. Walker three checkers from the Housing Opportunity Center testified concerning the policies and practices of Mrs. Fox in the operation of the rooming house. The first tester to inquire about a room was Mr. Thomas Isaacs, a white landlord tenant counselor at the Housing Opportunity Center, who testified that on or about November 13, 1973, in response to his inquiry he was shown an unoccupied room which was available for immediate rental. On November 16, 1973, a second checker, Maurice Alfred, a black university student, went to the rooming house. Mr. Alfred testified that after seeing a room-for-rent sign he was told by the lady who answered the door that there had been a room available but that it was presently being held for someone from out of town. Subsequently, on November 20, 1973, a white checker, Manuel Bando, was sent to the rooming house to inquire. He testified that the landlady told him she had two rooms then available and would be having still a third become available soon. While I

recognize that rooms in rooming houses perhaps cater to a more transient type of boarder, I find it unlikely that there would be such a flux in rooms in the limited number of days in question. Therefore, I find the testimony of these checkers tends to be corroborative of Ms. Walker's concerning the rental practices of Mona Fox. Mrs. Fox testified that she could not specifically remember having the above conversations with Ms. Walker and further that she did not prohibit blacks from residing in her rooming house but only persons who are dirty and unkempt. Under the circumstances presented herein I find Ms. Walker to be the more credible witness, and I further find that the plaintiff has by a preponderance of the evidence established discriminatory practices and policies on the part of defendant Fox.

A more difficult question is raised by plaintiff's contention that defendant Neil Avenue Baptist Church is also liable for Fox's discriminatory acts. Plaintiff asserts the Church is liable on the theory of respondeat superior and also because the duty not to discriminate under Title VIII is nondelegable. While I have no real disagreement with plaintiff's legal theories, I find that they simply are not applicable here. Contrary to the factual patterns involved in the case law cited by the plaintiff, there was absolutely no evidence adduced at trial showing that Mona Fox was a rental agent for the Church; on the contrary, she appears to be an independent contractor. She procured a rooming house license in her own name from the City of Columbus and thus was not running the house in the name of the Church. Nor did the Church have any control over her with regard to the rent she set or the persons to whom she would or would not rent. In fact, at one point the Church attempted to get one of their elderly members a room at the

---

1. Although not made an issue in this action the Court notes that a white individual, such as plaintiff herein, has standing to sue if he or she is injured by acts or practices violative of Title VIII. See *Trafficante* v. *Metropolitan Life Insurance Company*, 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972).

house but Mona Fox refused, stating she felt this individual too incapacitated. The Church under its agreement with her had no power or authority to insist on the rental.

Moreover, Mona Fox in no way represented the Church nor was she authorized to do so. In *United States* v. *Real Estate Development Corporation*, 347 F. Supp. 776 (N.D.Miss.1972), the Court in holding a property owner responsible for the discriminatory act of its rental agent summed up the supporting case law:

> The resident managers and managers of the defendants, as agents of the defendants, *are authorized to represent the defendants and can rent in no other capacity.* Their acts and statements, made within the scope of their agency, are attributable to the defendants, whose duty to comply with the law is non-delegable. (Emphasis supplied.)

*United States* v. *Real Estate Development Corporation, supra,* at 785. This type of relationship and the resulting control of one over the other does not exist between defendants Fox and Neil Avenue Baptist Church. The only connection between them arises from the Church's ownership of the property and its rental of it to Fox; the relationship between them is one of landlord and tenant, not principal and agent. Plaintiff has cited no case nor has this Court's own research produced any which support the conclusion that mere ownership without knowledge, control, or responsibility is sufficient to hold one liable for the discriminatory acts of another. To do so would be tantamount to making one an absolute insurer in this regard. Despite the fact that "an examination of

the Act, 42 U.S.C. §§ 3601–12, reveals a broad legislative plan to eliminate all traces of discrimination within the housing field," *Marr* v. *Rife,* 503 F.2d 735, 740 (6th Cir. 1974), I decline to extend the concept of duty under the act in such a way as to make a property owner, by reason of ownership alone, an insurer of his property for purposes of Title VIII.

■ The final question to be resolved herein concerns the damages owed the plaintiff by defendant Fox. The uncontradicted testimony of Ms. Walker established that she suffered out-of-pocket expenses totalling $308.00.[2] Further Ms. Walker also testified—again this was uncontradicted—that she suffered emotional and mental anguish because of the discriminatory conduct. She wrote letters to her family and talked to school and civil rights officials attempting to work out the conflict and distress she felt. I find that an additional compensatory amount for such distress is appropriate under the facts presented, see *Seaton* v. *Sky Realty Company,* 491 F.2d 634 (7th Cir. 1974), and that a total compensatory award of $500.00 would be a reasonable amount.

■ Plaintiff also seeks punitive damages. Such damages are usually given where the conduct is found to be willful or wanton or where a deterrent effect will be accomplished. See *Marr* v. *Rife,* 503 F.2d 735 (6th Cir. 1974) and the cases cited therein. Further, 42 U. S.C. § 3612 specifically provides that a court may award punitive damages where it deems these appropriate. Finding as I do that Mrs. Fox showed a willful disregard for the rights of others, I deem an award of $250.00 punitive damages to be appropriate.

2. This amount includes $15.00 per month of extra rent Walker was forced to pay, $15.00 per month in utilities and $8.50 per month for telephone, for the eight months between November and June, 1974. The plaintiff testified that she would have stayed at the rooming house until June, the date of her graduation from college, had she not moved from the rooming house because of Mona Fox's discriminatory actions. Although there was some dispute as to the exact reasons for plaintiff's decision to move, I find her leaving was actually prompted by Fox's acts.

Finally, plaintiff asks for attorney fees. 42 U.S.C. § 3612(c) provides, in relevant part, that the trial court

> may award to the plaintiff . . . court costs and reasonable attorney fees in the case of a prevailing plaintiff: Provided, That the said plaintiff in the opinion of the court is not financially able to assume said attorney's fees.

Although 42 U.S.C. § 1982 contains no such express authorization, such expenses have nevertheless been allowed in § 1982 cases. See *Knight* v. *Auciello*, 453 F.2d 852 (1st Cir. 1972); *Lee* v. *Southern Home Sites Corporation*, 444 F.2d 143 (5th Cir. 1971). Further, as the United States Court of Appeals for the Sixth Circuit pointed out in *Marr* v. *Rife, supra,* the Supreme Court of the United States has indicated a policy favoring the award of attorney fees. In *Newman* v. *Piggie Park Enterprises, Inc.,* 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968) the Supreme Court said:

> If successful plaintiffs were routinely forced to bear their own attorney' fees, few aggrieved parties would be in a position to advance the public interest by invoking the injunctive powers of the federal courts.

Although § 3612 contains a proviso as set out above, § 1982 does not require an inquiry into a plaintiff's financial condition. I conclude that an award of attorney fees is appropriate here; however, since the violations were alleged against two defendants, only one of which was found to be liable, I also conclude that it would be more reasonable to allow the plaintiff a proportionate amount of attorney fees. Therefore, of the $2,000.00 requested by plaintiff, $750.00 will be granted for attorney fees.

In accordance with this opinion it is hereby ordered:

That judgment be entered for plaintiff and against defendant Fox and that plaintiff be paid $500.00 compensatory damages, $250.00 punitive damages, and $750.00 in attorney fees; and

That judgment be entered for defendant Neil Avenue Baptist Church.