**Myra P. YOUNG, Plaintiff,**

v.

**PARKLAND VILLAGE, INC., Defendant.**

**Civ. No. H–76–297.**

United States District Court,
D. Maryland.

Oct. 25, 1978.

Kenneth L. Johnson and Johnson & Smith, P. A., Baltimore, Md., and W. Edward Thompson, Washington, D. C., for plaintiff.

Browne L. Kooken and Dukes & Kooken, Landover, Md., for defendant.

ALEXANDER HARVEY, II, District Judge:

In this civil action, plaintiff, a black female, is seeking damages and other relief under 42 U.S.C. §§ 1981 and 1982 for alleged discrimination resulting from the refusal of the defendant, Parkland Village, Inc., to rent her an apartment because of her race. Following extensive pretrial proceedings, this case was tried by the Court sitting without a jury. Various witnesses testified, and numerous exhibits were admitted in evidence. Pretrial and post-trial briefs were submitted by the parties and have been considered by this Court. This Court's findings of fact and conclusions of law, under Rule 52(a) of the Federal Rules of Civil Procedure, are embodied in this Opinion, whether or not expressly so characterized.

Both the original and the amended complaint sought relief not only from the corporate defendant but also from Charles J. Shapiro, its President. In her pleadings, plaintiff advanced various legal theories in support of her claim for relief, alleging violations of the Fair Housing Act of 1968 (42 U.S.C. §§ 3610 and 3612) and of the Civil Rights Act of 1866 and 1870 (42 U.S.C. §§ 1981 and 1982). In her pretrial brief, plaintiff expressly abandoned her § 3612 claim, and at the close of the plaintiff's case, this Court granted defendant's motion to dismiss the § 3610 claim and to dismiss all claims asserted against the defendant Shapiro individually. Remaining then for decision are plaintiff's claims asserted under § 1981 and § 1982 against the corporate defendant.

## I

### *The applicable legal principles*

In the very recent case of *Sandford v. R. L. Coleman Realty Co., Inc.,* 573 F.2d 173

(4th Cir. 1978), the Fourth Circuit recognized that in a case of this sort brought under 42 U.S.C. §§ 1981 and 1982, a plaintiff must prove three essential elements. These elements are (1) that the plaintiff attempted to lease an apartment from defendant and was ready, willing and able to pay the defendant's rental price; (2) that the defendant refused to lease an apartment to the plaintiff or to negotiate for the rental of an apartment; and (3) that the reason for the defendant's action was the race of the plaintiff. *Id.* at 175.

██ Other recent decisions have elucidated these principles. Thus, "where a black rental applicant meets the objective requirements of a landlord, and the rental would likely have been consummated were he or she a white applicant, a *prima facie* inference of discrimination arises as a matter of law. If the inference is not satisfactorily explained away, discrimination is established." *Smith v. Anchor Bldg. Corp.,* 536 F.2d 231, 233 (8th Cir. 1976); *Williams v. Matthews Co.,* 499 F.2d 819, 826 (8th Cir.), *cert. denied,* 419 U.S. 1021, 95 S.Ct. 495, 42 L.Ed.2d 294 (1974). *See generally Jones v. Alfred H. Mayer Co.,* 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968).

## II

### The facts

Plaintiff, Myra P. Young,[1] is a black woman. In early February 1975, plaintiff filed a written application for a two-bedroom apartment at the Parkland Village Apartments, located in District Heights, Prince George's County, Maryland. At that time, she was told by a female employee of defendant that the rent for a two-bedroom apartment was $167.00 a month, that there were no vacancies and that there was a waiting list. Her application was subsequently dated February 28, 1975.

Between February and July, 1975, plaintiff telephoned the defendant's rental office approximately two or three times a month and was told that no two-bedroom apartments were yet available. However, between May and July, 1975, at least three two-bedroom apartments became available and were rented by defendant to white applicants Parkinson, Claro and Johnson, who had applied after the plaintiff.

In an effort to ascertain the status of her application, plaintiff on July 22, 1975 telephoned Mrs. Pat Plexnies, who, together with her husband William, was the resident manager at Parkland Village from May until November, 1975. Mrs. Plexnies advised plaintiff that some vacancies were anticipated in August. Plaintiff accordingly made an appointment to see Mrs. Plexnies the following day.

On July 23, 1975, plaintiff arrived at defendant's rental office for her 11:30 A. M. appointment with Mrs. Plexnies, but was told by Mr. Plexnies that his wife was not there. Plaintiff left her name and telephone number with Mr. Plexnies, requesting that his wife call her. That same afternoon, Mrs. Plexnies telephoned plaintiff and told her, *inter alia,* that Parkland Village did not rent to blacks. Mrs. Plexnies stated that while she and her husband did not feel that way, nevertheless the owners of the apartment were from West Virginia and had never rented to blacks.

It was the testimony of Violet M. Kasulke, a resident of Parkland Village for twenty-nine years and the Resident Manager of the apartment complex from November 1975 to November 1977, that there had never been a black tenant in the defendant's 159 units until she rented an apartment to a black woman in December 1975. It was the testimony of Evelyn Luchansky, who became Resident Manager in November 1977, that there were no black tenants from the late 1940s to December 1975; that there was one black tenant from December 1975 to November 1977; and that at the present time, there were three black families residing at the apartment complex, including one very recent tenant who had rented an apartment in May 1978.

On July 31, 1975, plaintiff filed a complaint of racial discrimination with the

---

1. At the time of these events, plaintiff bore the name Myra P. Hardy. She has since remarried.

Prince George's County Human Relations Commission (hereinafter "the Commission"). In August 1975, the Plexnies telephoned plaintiff and offered her a two-bedroom apartment at the then current rental price of $210 a month, plus an optional $18 per month for air conditioning. After consulting with James Hopewell, an investigator for the Commission, plaintiff declined to accept the apartment pending the outcome of the Commission's investigation. It was the testimony of the plaintiff that in August 1975 it was her "feeling" that she would not take the apartment because she did not want to be a "pioneer" in an all white apartment complex. Plaintiff also objected to the rental price which in August was higher than the $167.50 figure mentioned in February.

■ On December 1, 1975, Mr. Hopewell of the Commission interviewed William and Pat Plexnies.[2] Mr. Plexnies told Hopewell that when he was Resident Manager, he had been told by Mr. Shapiro, the President of defendant corporation, not to rent to blacks, children or young people. Defendant objected strenuously to the admissibility of this evidence. Although this Court is satisfied that the evidence is admissible, little weight will be accorded the statement which Mr. Plexnies made to Mr. Hopewell on December 1, 1975. Mr. and Mrs. Plexnies had been fired on November 17, 1975, because they allegedly consumed alcohol during working hours. Shortly thereafter, Mr. Plexnies threatened to retaliate against Mr. Shapiro if he was not immediately rehired. He subsequently made the statement recounted by Mr. Hopewell at the trial. Under these circumstances indicating bias on the part of a disgruntled former employee, the statement of Mr. Plexnies is too untrustworthy to be accorded weight in this case.

On December 30, 1975, the County Human Relations Commission found reasonable cause to believe that plaintiff had been subjected to racial discrimination in that defendant had refused to rent her any one of ten two-bedroom apartments which purportedly became available while her application was on file. Mr. Shapiro was formally notified of the findings of the Commission and was requested to attend a reconciliation conference.[3]

On January 27, 1976, at a conciliation meeting before the Commission, plaintiff was again offered a two-bedroom apartment by the defendant but she once again refused the offer. On June 10, 1976, a settlement agreement was executed by plaintiff, by defendant and by the Commission, whereby defendant agreed to establish non-discriminatory criteria for the selection of tenants and to maintain statistics for twelve months concerning the race of applicants and tenants. The settlement agreement expressly reserved to plaintiff the right to file suit in this Court and seek appropriate relief for the violations which the Commission had found to exist.

Meanwhile, on January 19, 1976, plaintiff had filed a complaint of racial discrimination with the Department of Housing and Urban Development, pursuant to 42 U.S.C. § 3610(a). Following the expiration of the statutory thirty-day period, plaintiff commenced this civil action in this Court on February 26, 1976.[4]

### III

*Liability*

■ After considering all the evidence and giving due weight to the credibility of

---

2. Despite efforts by both sides to ascertain the whereabouts of Mr. and Mrs. Plexnies, they could not be located and did not testify at the trial.

3. This Court finds that much of the data relied upon by the Commission did not support its conclusion. The ten apartments mentioned include three apartments rented to tenants after plaintiff had turned down a two-bedroom apartment offered to her around August 26, 1975, apartments leased to an employee and to a long-term tenant who had transferred from a one to a two-bedroom apartment, and two other apartments rented to white tenants after plaintiff had filed her complaint of discrimination with the Commission on July 31, 1975.

4. Proceedings in this case were delayed because plaintiff was unable to effect service on defendant until almost a year after suit was filed.

the witnesses, this Court concludes that the statemen⁺s of Mrs. Plexnies of July 23, 1975, together with the statistical evidence in this case, conclusively establish that plaintiff was denied an apartment by defendant because of her race. Mrs. Plexnies, who at the time was one of the Resident Managers, flatly told plaintiff that Parkland Village did not rent to blacks. Moreover, the statistical evidence, indicating that defendant had never rented to a black until December 1975 and that very few of the 159 apartment units have been rented to blacks since them, is highly probative here. *Cf. McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 805 n. 19, 93 S.Ct. 1826, 36 L.Ed.2d 668 (1973). Through the evidence which she has produced at the trial, plaintiff has proved all of the essential elements necessary to establish liability set forth in *Sandford v. R. L. Coleman Realty Co., Inc., supra.*

In view of this evidence, the Court will not accept the testimony proffered by defendant that it has always followed a non-discriminatory "first come, first served" rental policy. This Court would further note evidence in this record that defendant marked some of the rental applications of prospective black tenants with a capital "B", in order to further its racially discriminatory policies. Under all these circumstances, this Court is satisfied that plaintiff is entitled to appropriate relief under 42 U.S.C. §§ 1981 and 1982. Plaintiff is here seeking an injunction, compensatory damages, punitive damages, attorneys' fees and costs.

## IV

### Compensatory damages

■ As compensatory damages, plaintiff is entitled to the difference between her actual rent payments at the apartment where she was residing and the lower rent at Parkland Village for the period of June 1, 1975 to October 1, 1975. June 1, 1975 is the appropriate starting date because the evidence at the trial indicated that in May 1975 a two-bedroom apartment became available, that on June 1, 1975 such an apartment was rented to white tenant Claro and that plaintiff's application had been filed before that of Claro. The evidence disclosed no earlier vacancies which might have been filled by plaintiff.

■ On the record here, this Court is further satisfied that plaintiff is not entitled to damages beyond October 1, 1975. It is not disputed that on or about August 26, 1975, plaintiff refused a two-bedroom apartment offered to her by defendant. As in any case, the plaintiff here had a duty to mitigate damages. She would not be entitled to build up the amount of damages to be awarded her by declining to accept what she was seeking from the outset in the application she originally filed with defendant. The reasons ascribed by plaintiff for not accepting an apartment in August 1975 would not justify her failure to mitigate damages. Therefore, after due allowance for the required thirty days notice to her prior landlord, plaintiff could have moved into Parkland Village by October 1, 1975, following defendant's offer in August 1975 to rent an apartment to her.

Plaintiff testified that her rent at Silver Park Apartments where she resided in February 1975 was approximately $200 a month until July 1975, when it increased to approximately $236 a month. Plaintiff also testified that she was told in February 1975 that defendant would rent a two-bedroom apartment for $167.50 a month. However, the evidence presented by defendant conclusively establishes that the rent for a two-bedroom apartment at Parkland Village Apartments after June 1, 1975 was $210 a month, plus $18 for optional air conditioning. Therefore, assuming that plaintiff did not desire air conditioning, plaintiff's actual damages are limited to $10 for June, and $26 per month for July, August and September, 1975, or a total of $88 compensatory damages for lost rent.

■ Plaintiff also seeks an award for time she lost from work while prosecuting her claims before the Commission and in this Court. No such compensatory damages will be awarded by this Court. Any litigant

necessarily must devote time to the prosecution of a claim before an administrative body or before a court. Any time lost from work is a normal concomitant of litigation and is not chargeable to a defendant.

■ However, plaintiff is entitled to compensatory damages for emotional distress, humiliation and mental anguish. *Gore v. Turner*, 563 F.2d 159, 164 (5th Cir. 1977); *Seaton v. Sky Realty Co., Inc.*, 491 F.2d 634 (7th Cir. 1974); *Steele v. Title Realty Co.*, 478 F.2d 380 (10th Cir. 1973). The testimony of plaintiff, as well as the testimony of her co-workers Shirley D. Jones and Margaret A. Keith, establish that plaintiff was indeed shocked and upset by the phone call from Mrs. Plexnies on July 23, 1975.

■ A review of the pertinent authorities indicates that recent awards of compensatory damages for humiliation and mental anguish in cases of this sort have ranged from $192 to $2500. *Seaton v. Sky Realty Co., Inc.*, 491 F.2d 634 (7th Cir. 1974) ($500); *Steele v. Title Realty Co.*, 478 F.2d 380 (10th Cir. 1973) ($861.75); *Walker v. Fox*, 395 F.Supp. 1303 (S.D.Ohio 1975) ($192); *Lamb v. Sallee*, 417 F.Supp. 282 (E.D.Ky. 1976) ($300 and $750); *McNeil v. P–N & S, Inc.*, 372 F.Supp. 658 (N.D.Ga.1973) ($2500); *Hughes v. Dyer*, 378 F.Supp. 1305 (W.D.Mo. 1974) ($1500); *Stevens v. Dobs, Inc.*, 373 F.Supp. 618 (E.D.N.C.1974) ($1500). Under all the circumstances here, this Court is satisfied that an appropriate award of compensatory damages for emotional distress would be $1,000. Accordingly, plaintiff is entitled to compensatory damages of $1,088.00.

V

*Punitive damages*

■ Plaintiff also seeks punitive damages. Such damages are usually awarded in a flagrant case of racial discrimination such as this one. *E. g., Gore v. Turner, supra; Sanborn v. Wagner*, 354 F.Supp. 291 (D.Md.1973). Recent awards of punitive damages in housing discrimination cases have ranged from $100 to $1,000.

*Seaton v. Sky Realty Co., supra* ($1000); *Marr v. Rife*, 503 F.2d 735 (6th Cir. 1974) ($250); *Sanborn v. Wagner*, 354 F.Supp. 291 (D.Md.1973) ($500); *Walker v. Fox, supra* ($250); *Lamb v. Sallee, supra* ($100 and $500); *Hughes v. Dyer, supra* ($1000); *Williamson v. Hampton Mgmt. Co.*, 339 F.Supp. 1146 (N.D.Ill.1972) ($500). This Court will, however, give defendant credit for the manner in which its officers cooperated with the Commission in the latter's investigation of these matters. It should further be noted that on two separate occasions defendant made conciliatory offers to plaintiff to rent her the apartment she was seeking. Under all the circumstances of this case, this Court is satisfied that an award of $750.00 in punitive damages is appropriate.

VI

*Injunctive relief*

Plaintiff contends that she is also entitled to injunctive relief because defendant allegedly continues to discriminate against blacks in the rental of apartments. At the outset, this Court would note that plaintiff has been living in a house since January 14, 1978. This is not a class action, and plaintiff has not been subjected to discrimination since October 1, 1975, at which time she did not move into an apartment previously offered to her by defendant.

In any event, the evidence at trial did not establish any racial discrimination by the defendant in the period after plaintiff's experience in July 1975. Mrs. Violet Kasulke, the Resident Manager from November 1975 to November 1977, testified that when she became Resident Manager, she contacted all the old applicants and started a new waiting list. The first apartment she rented was to a black tenant, Ms. Imelia House, whose name was first on the waiting list. Mrs. Kasulke followed a strict policy of "first come, first served," but the turnover of apartments during her tenure was extremely low. When Mrs. Kasulke resigned in November 1977, the waiting list was comprised of 52 individuals for two-bed-

room apartments and 47 or 48 individuals for one-bedroom apartments. As of November 1977, defendant was renting to individuals who had filed applications in January 1976.

This Court will also credit the testimony of Evelyn Luchansky, who has been Resident Manager at Parkland Village since November 1977. Mrs. Luchansky testified that she follows a strict policy of "first come, first served" and that she has personally rented to two black families.

In seeking injunctive relief in this case, plaintiff relies on the testimony of a black applicant, Ms. Agnes Theresa Savoy, who applied in July 1975 but has not yet received an apartment. However, Mrs. Kasulke testified that she telephoned Ms. Savoy five times to offer her an apartment but Ms. Savoy was never home. Mrs. Kasulke's testimony was corroborated by notations on the Savoy application.

█ After a review of all the evidence here, this Court is satisfied that plaintiff has not shown racial discrimination by defendant since August 1975, when defendant received notice that a charge had been filed with the County Commission. In January 1976, defendant entered into a settlement agreement negotiated by the Commission, whereby defendant agreed that it would not discriminate on the basis of race in its selection of tenants. There is no indication that defendant has not fully complied with the provisions of that settlement agreement. Plaintiff points out that there are ten blacks presently on defendant's waiting list and asks this Court to infer discrimination from this fact alone. However, other evidence in this case indicates that since 1975 defendant has had a lengthy waiting list with few vacancies, that defendant is now strictly adhering to a "first come, first served" policy in the rental of apartments, that three black families have been rented apartments by defendant, and that other black applicants have received telephone calls concerning future vacancies. Under all these circumstances, this Court is satis-

fied that plaintiff is not entitled to injunctive relief in this case.

## VII

### Attorneys' fees

Following submission of her post-trial brief, plaintiff filed a petition seeking an award of attorneys' fees. Defendant has filed an answer to this petition and has requested a hearing. Defendant points out that it cannot properly address the issues presented by plaintiff's claim for attorneys' fees until it is apprised of the Court's rulings as to liability and damages in this case.

Under these circumstances, this Court is satisfied that a further hearing should be held in this case concerning the question of an award of attorneys' fees. Counsel will be advised of a hearing date and should be prepared to argue the questions presented by plaintiff's pending petition in the light of the rulings made herein.

## VIII

### Conclusion

For the reasons stated, judgment will be entered in favor of the plaintiff against the defendant Parkland Village, Inc. in the amount of $1,838.00, plus costs. The Court will reserve ruling as to plaintiff's claim for an award of attorneys' fees.